574 So.2d 13 (1990)
HARVEY-LATHAM REAL ESTATE
v.
UNDERWRITERS AT LLOYD'S, LONDON.
No. 07-CA-59197.
Supreme Court of Mississippi.
December 19, 1990.
*14 David M. Sessums, Varner Parker Sessums Lancaster & Akin, Vicksburg, for appellant.
Kenneth B. Rector, Chicago, Ill., for appellee.
Before HAWKINS, ANDERSON and BLASS, JJ.
BLASS, Justice, for the Court:
Plaintiff/appellant, Harvey-Latham Real Estate (hereinafter Harvey-Latham) is a partnership composed of T.C. Harvey, Jr. and Hayes Latham. It owned a building on Highway 1 North in Greenville which it insured with Lloyd's of London for $15,000. On September 19, 1986, Harvey-Latham filed a complaint against Underwriters at Lloyd's, London (hereinafter Lloyd's), in the Circuit Court of Warren County. Harvey-Latham alleged (1) Lloyd's issued an insurance policy on September 6, 1985, which insured plaintiff's building; (2) said building was destroyed by fire in May, 1986; (3) the destruction was included in the insurance policy; and (4) the fire took place during the policy period. Harvey-Latham further alleged that, although demand was given, the insurance company refused, for no arguable or legitimate reason, to pay said claim. Harvey-Latham requested $15,000 in actual damages and $50,000 in punitive or exemplary damages, attorneys fees, prejudgment interest, and all costs.
Lloyd's answered that, at the time of the loss, the property in question was under lease, and that the lessee had insured the property for $50,000 with Commercial Union Fire Insurance Company; that Harvey-Latham's policy included an apportionment clause providing that in such case Lloyd's was only liable for a proportionate amount; and should they be liable under the policy, it would only be for a pro-rata portion of the loss.
On February 16, 1988, months after the fire, Lloyd's filed a motion for summary judgment, and argued that it had tendered to Harvey-Latham the policy limit of $15,000 in August, 1987, and the only claim remaining, as a matter of law, was the *15 punitive damages issue. On April 14, 1988, Judge Ellis granted the motion and explained his decision as follows:
This Court is of the opinion that to permit this case to be submitted to a jury on the issue of punitive damages is inconsistent with the legitimate reasons of the defendant in investigating what effect, if any, the other $50,000.00 insurance policy would have on its payment of its payment amount.
This court recognizes that it is against public policy to over-insure property for reasons that have been well documented by the opinions of the Supreme Court. This Court further feels that to continue this case and have it submitted to a jury on the issue of punitive damages would parallel permitting a trial before a jury in this case to be equivalent to the parties participating in a lottery. It is recognized by this Court that Lloyds of London is a corporate defendant of sizable wealth and that the plaintiff's refusal to accept the $15,000.00 to settle his [sic] loss is not consistent with the well defined rule in the application of punitive damages. That punitive damages are reserved to punish a defendant and hold him responsible for breaches of insurance contract law.
Therefore, ... this Court is of the opinion that no material issue exists in this case and it is a proper case for disposition by motion for summary judgment and, motion for summary judgment on behalf of the defendant is hereby directed.
Harvey-Latham appeals and cites as error the lower court's granting of summary judgment.

I.
This dispute should have been resolved without litigation. There existed a fire insurance policy and there was a fire during the covered period. The building was determined to be a total loss and there was never any dispute as to the coverage.
Lloyd's had issued a $15,000 owner's policy to Harvey-Latham and a $50,000 lessee's policy was issued by Commercial Union. The owner's policy provided for apportionment, and initially, Lloyd's had some hope of being liable for less than the full face amount of the policy. While that prospect was open, it was at least arguable that the amount was not certain, and the insurer had an arguable reason for not paying the full $15,000.
The fire occurred in the spring of 1986, and according to Lloyd's brief, it appears that the apportionment issue was resolved the first week of September, 1986. After that week the reason for refusal to pay the claim is not apparent to us, and despite the language of the contract, and despite the fact that the amount became certain in September, 1986, the claim remained unpaid.
On September 19, 1986, Harvey-Latham filed suit. At that time the apportionment issue appears to have been resolved, and no further arguable reason existed for not paying the claim, so far as we can ascertain from the record. However, the apportionment issue had not long been resolved, and it would have been understandable had there been some reasonable delay after that event to allow the facts to percolate through the administrative structure of Lloyd's organization and to reach the action people. Nevertheless, the fact is that Lloyd's answered the complaint, and asserted the apportionment issue, which had earlier ceased to exist as a defense. There was much to do about discovery and trial preparation, but no tender of payment was made until August, 1987, almost a year after the amount due became fixed and ceased to be in question. We find no explanation for this delay in the record or in the briefs of the parties. The case is presented as if Lloyd's believed that the rights of the parties became fixed in the early days of the dispute, and that if there was an arguable reason for delay then it would continue indefinitely, regardless of the changing facts. Surely, after September 1986, it must have dawned on Lloyd's that it owed Harvey-Latham the money claimed in the suit, and we do not see in this record any justification for failure to pay until August, 1987.
*16 Lloyd's contends it acted fairly and in good faith and that its actions did not amount to an independent tort as required under Standard Life Insurance Co. v. Veal, 354 So.2d 239, 248 (Miss. 1977), but we are unable to ascertain from the record whether or not Lloyd's had an arguable reason to withhold payment from September 19, 1986, to August, 1987. The familiar rule under which this Court considers the record in the review of summary judgments was most recently set out in Newell v. Hinton, 556 So.2d 1037 (Miss. 1990) as follows:
In determining whether the trial court was proper in granting ... [s]ummary [j]udgment, we must conduct de novo review.
The law governing the grant or denial of a motion for summary judgment is well established. This Court has explained repeatedly:
The trial court must review carefully all of the evidentiary matters before it  admissions in pleadings, answers to interrogatories, depositions, affidavits, etc. The evidence must be viewed in the light most favorable to the party against whom the motion has been made. If in this view the moving party is entitled to judgment as a matter of law, summary judgment should forthwith be entered in his favor. Otherwise the motion should be denied.
.....
The movant is strapped with the burden of demonstrating that no genuine issue of fact exists while the non-movant is given the benefit of every reasonable doubt. By the same token, however, the non-movant cannot just sit back and remain silent, but he must rebut by producing significant probative evidence showing that there are indeed genuine issues for trial.
Newell, 556 So.2d at 1041 (Miss. 1990) (citations omitted).
Accordingly, we are unable, on the record before us, to affirm the trial court's conclusion that no issue of material fact remained and Lloyd's was entitled to judgment as a matter of law.

II.
After further hearing, this matter may go to the jury on the issue of punitive damages. However, under Mississippi law, "[a]ny plaintiff asking for punitive damages, or any special or extraordinary damages based upon `bad faith' of an insurance company has a heavy burden." Blue Cross & Blue Shield v. Campbell, 466 So.2d 833, 842 (Miss. 1984). If the punitive damage issue does go to the jury, it should be submitted under appropriate instructions so that the jury may understand that the purpose of punitive damages is punishment, for the purpose of deterring further misconduct, and award damages accordingly.
Although it has been frequently stated that the amount of punitive damages is a matter solely within the authority and discretion of the jury, it is unclear what formula is used to reach the amount. See, e.g., Employers Mut. Casualty Co. v. Tompkins, 490 So.2d 897 (Miss. 1986); Commodore Corp. v. Bailey, 393 So.2d 467, 471 (Miss. 1981); Collins v. Black, 380 So.2d 241, 244 (Miss. 1980); Sandifer Oil Co. v. Dew, 220 Miss. 609, 71 So.2d 752 (1954); Teche Lines, Inc. v. Pope, 175 Miss. 393, 166 So. 539 (1936). In most jurisdictions the jury is instructed of the purpose behind an award of punitive damages, but receives little guidance in its determination of an amount. Ghiardi, Punitive Damages Awards  An Expanded Judicial Role, 72 Marq.L.Rev. 33, 34 (1988). Mississippi is no exception, as this Court held the following instruction proper in McGowan v. Estate of Wright, 524 So.2d 308 (Miss. 1988):
Punitive damages are added damages awarded for public service in bringing a wrongdoer to account, as an example to warn and deter others from repeating the same act. They are never awarded to benefit the injured party or as a matter of right, but rather to punish and to compel the wrongdoer to have due and proper regard for the rights of the public.
Punitive damages may be awarded Plaintiff if you find that the Defendant's *17 reckless acts, if any, were committed by gross negligence indicative of a wanton and wilful disregard of the right of others.
McGowan, 524 So.2d at 310.
A factor which the jury may consider is the financial worth of the defendant. Bankers Life and Casualty Co. v. Crenshaw, 483 So.2d 254 (Miss. 1985). The gravity of the wrong and the egregiousness of the act must also be examined. By analogy, punishment prescribed under our criminal statutes varies widely depending upon many factors, such as: the seriousness of the offense, the degree of injury suffered by the victim or by society; and whether the offender is an habitual offender. Just as the sentencing judge studies the presentence report, sometimes finding extenuating circumstances which lead him to impose a lesser sentence than the maximum allowable, so also must a jury examine the facts in a civil action where punitive damages are sought. The jurors must weigh all of the facts surrounding the censured behavior to determine whether punitive damages should be imposed and if so, to what extent.
The jury needs to know why and how the bad thing happened. Was it the policy of the defendant to frequently, or routinely engage in such practices? Was it "company policy"? Did a big person or entity simply run over one which or who was small and helpless? Did the victim actually suffer any serious or crippling personal or economic hardship? Was the defendant put in the position of oppressor by the act of an employee or agent, contrary to the usual practice and policy of the defendant?
It is imperative that some parameters be developed for the guidance of juries and courts fixing the amount of punitive damages. The present undefined and open-ended status breeds disrespect for the law and for the courts and cannot be defended in reasoned debate. Standards need to be developed which will result in reasonable similar consequences, given reasonably similar circumstances. This objective has not been seriously addressed by this Court, and by few in the nation. It is a legitimate judicial undertaking, and should be accomplished by finding a just resolution of the several cases that come before us, one at a time. When enough cases have been decided the rules shall have emerged. We do not write statutes.
Courts in some jurisdictions have recognized the need for tighter control on punitive damage awards. See Ghiardi, supra at 42. The First Circuit in Rowlett v. Anheuser-Busch, Inc., 832 F.2d 194 (1st Cir.1987) held that the jury should utilize a balancing test to weigh factors such as "grievousness of the conduct, the solvency of the guilty party, and the potential for deterrence of the verdict." Rowlett, 832 F.2d at 207.
In Connecticut the court determines the amount, which cannot exceed twice the amount of damages awarded. Conn. Gen. Stat. Ann. § 52-240b (West Supp. 1988). Other states provide a maximum amount of recovery. See Ala. Code § 6-11-21 (Supp. 1988) (limited to $250,000 with some exceptions); Tex.Civ.Prac. & Rem.Code Ann. § 41.007 (Vernon Supp. 1987) ($200,000 or four times the amount of actuals); Colo. Rev. Stat. § 13-21-102 (1987) (limited to amount of actuals); Va. Code Ann. § 8.01-38.1 (Supp. 1988) ($350,000); Ga. Code Ann. § 51-12-5.1 (1987) ($250,000, with some exceptions); Fla. Stat. Ann. § 768.73(1)(c) (West Supp. 1988) (three times amount of compensatory damages, with exceptions); Okla. Stat. Ann. tit. 23, § 9 (West 1987) (limited to amount of actuals, with exceptions). Additionally, the Montana, Kansas, Ohio and Kentucky legislatures have restricted the amounts of recovery. See Mont. Code Ann. § 27-1-221 (1987); Kan. Stat. Ann. § 60-3701 (Supp. 1987); Ohio Rev. Code Ann. § 2307.80 (Anderson Supp. 1988); Ky. Rev. Stat. Ann.Stats. § 411.186 (Baldwin 1988). For an excellent discussion of reform in punitive damages awards, see Ghiardi, supra at 43-45.
Although arguably through dictum, this Court recognized that punitive damages should be limited in Tideway Oil Programs, Inc. v. Serio, 431 So.2d 454 (Miss. 1983). Justice Robertson noted in Tideway *18 that "in the present `atmosphere', the standards for award of punitive damages should be restricted  to assure that such damages are given only to those truly public spirited plaintiffs." Tideway, 431 So.2d at 460 n. 1.

III.
We cannot tell whether the case before us is a proper one for punitive damages. More facts will have to be known before the trial court can make a fully informed judgment. Some issues may have to be presented to a jury, or the whole picture may be such that the court can make the decision. If the court determines that it is an appropriate case, the question may be submitted to the jury. If that should occur the jury should be instructed adequately as to what it should consider in reaching its verdict.
The questions set out above are not a check list, to be referred to as if they appeared in a statute. They are suggested to indicate the nature of the inquiry which ought to be made when inquiring into the question of the propriety and amount of punitive damages. Each case may suggest its own questions, and the trial court should see to it that the appropriate areas of inquiry are brought to the attention of the jury. After the plaintiff has been appropriately compensated for the public service or bringing an offender to justice, the interest of society takes over, and the award is to be examined in that light alone.
REVERSED AND REMANDED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, ANDERSON and PITTMAN, JJ., concur.
SULLIVAN, J., concurs in result only.