630 So.2d 337 (1993)
Earl Franklin TRAVIS
v.
HARTFORD ACCIDENT AND INDEMNITY COMPANY.
Nos. 90-CC-1222, 90-M-0727.
Supreme Court of Mississippi.
December 9, 1993.
Rehearing Denied February 10, 1994.
Paul Snow, Paul Snow & Associates, Thomas J. Lowe, Jr., Jackson, for appellant.
Robert S. Addison, Randolph C. Wood, Daniel Coker Horton & Bell, Jackson, for appellee.
Before DAN M. LEE, P.J., and SULLIVAN and BANKS, JJ.
DAN M. LEE, Presiding Justice, for the Court:
On November 22, 1985, appellant Earl Franklin Travis (hereinafter "Travis") sustained an injury while employed with Mississippi Steel, a division of Magna Corporation. Hartford Accident and Indemnity Company (hereinafter "Hartford"), Mississippi Steel's workers' compensation carrier, initially refused Travis' claim arguing that Travis' injury was not compensable as it did not occur within the course and scope of his employment. However, on January 6, 1987, an Administrative Law Judge found that the injury was, in fact, compensable and awarded Travis disability benefits of $59,850.00. This decision was appealed by Hartford. While the appeal was pending, counsel for Travis wrote a letter to Hartford. The letter, dated April 17, 1987, was in response to a letter written by an employee of Hartford to Travis' doctor, in which the doctor was informed that Travis' bills were not being paid because Travis refused to settle his claim.
In his letter, counsel for Travis threatened Hartford with a bad faith action due to Hartford's alleged unjustified refusal to pay medical bills incurred in connection with Travis' injury. Subsequent to this letter, counsel for the respective parties entered into settlement negotiations. These negotiations resulted in the alleged oral agreement which is the subject of Hartford's cross-appeal. In this alleged oral agreement, counsel for Hartford allegedly accepted counsel for Travis' settlement offer of $55,000.00 plus medical payment by Hartford as a complete settlement of any and all claims Travis had against Hartford relative to Travis' claim for workers' compensation benefits. According to counsel for Hartford, this settlement included any bad faith claims that Travis might have had. However, counsel for Travis maintained by letters to counsel for Hartford and through testimony at trial that the offer of settlement applied only to the claims relative to Travis' workers' compensation claim and did not include any bad faith actions.
The Administrative Law Judge's award was affirmed by the Commission on November 5, 1987, the circuit court on July 5, 1988, and this Court on April 11, 1990. Mississippi *338 Steel, Division of Magna Corporation v. Travis, 559 So.2d 1052 (Miss. 1990). Accordingly, Hartford paid to Travis the amount owed, $59,850.00, plus all accrued penalties and interest.
As a result of these failed negotiations, Hartford filed a complaint for declaratory judgment and specific performance on February 22, 1988, in the Chancery Court of the First Judicial District of Hinds County, Mississippi, to enforce the parties' alleged settlement agreement. Travis answered, denying that the settlement included his bad faith claims, and filing a counterclaim in which he alleged bad faith based on Hartford's failure to pay Travis workers' compensation benefits without a legitimate or arguable reason.
During the discovery process, Chancellor James Arden Barnett recused himself, and, by agreement of the parties, the Honorable Billy G. Bridges was appointed special chancellor to hear the action. The lower court bifurcated the proceedings and, on January 16-18, 1990, conducted a trial on the merits limited to the issue of the enforceability and validity of the alleged oral agreement. On March 12, 1990, the trial court entered its Opinion denying Hartford's complaint.
Hartford's motion for new trial was denied on April 23, 1990. Subsequently, Hartford filed a motion for interlocutory appeal to stay proceedings. This motion was denied by the lower court on June 28, 1990. Thereafter, Hartford filed a petition for interlocutory appeal by permission with this Court which was denied on or about August 18, 1990.
The parties next agreed that Chancellor Bridges would hear the issue of Travis' claim of bad faith, and on September 24-26, 1990, a trial was conducted. After the close of all the evidence, the lower court, in an opinion entered on November 9, 1990, granted Hartford's motion to dismiss and held that Hartford did not act in bad faith. The lower court then entered its final judgment on November 9, 1990, finally dismissing both Hartford's complaint for declaratory judgment and specific performance and Travis' counterclaim for bad faith. The parties' respective motions for new trial were denied by the lower court. Travis and Hartford then filed their notices of appeal and cross-appeal, respectively. Travis assigned as error the following:
I. Whether there exists an arguable or legitimate reason for withholding Workers' Compensation payments when the carrier is reasonably sure that it will not prevail on the issue of compensability.
II. Whether Hartford at all times it was withholding payment for disability and medical benefits had an arguable reason for failure to pay.
Hartford assigned as error the following:
I. Whether the lower court erred in (a) failing to find that an enforceable oral settlement contract was entered into between the parties which would have settled both appellant/cross-appellee's claim for workers compensation benefits and his claim of bad faith and, consequently, (b) dismissing appellee/cross-appellant's Complaint for Declaratory Judgment and Specific Performance.

LAW
Our decision in the case at bar is controlled by our holding in Collins by Smith v. McMurry, 539 So.2d 127 (Miss. 1989), wherein we stated:
The standard of review used by this Court when examining findings of fact as made by the chancellor has been stated many times. In Richardson v. Riley, 355 So.2d 667 (Miss. 1978), it was stated thusly:
The principle of law with which we are concerned has been repeated by this Court many times. It is that where the chancellor was the trier of facts, his findings of fact on conflicting evidence cannot be disturbed by this Court on appeal unless we can say with reasonable certainty that these findings were manifestly wrong and against the overwhelming weight of the evidence. Even if this Court disagreed with the lower court on the finding of fact and might have arrived at a different conclusion, we are still bound by the chancellor's findings unless manifestly wrong, as stated above.

Id. at 668. See also Matter of Estate of Varvaris, 528 So.2d 800, 802-803 (Miss. *339 1988). (Involving the interpretation of a will).
More specifically, this Court has also addressed the proper scope of review for judging the credibility of witnesses. In Pellegrin v. Pellegrin, 478 So.2d 306 (Miss. 1985) the Court wrote:
The credibility of the witnesses and the weight of their testimony, as well as the interpretation of evidence where it is capable of more than one reasonable interpretation, are primarily for the chancellor as the trier of facts. The issue here was a factual one and the chancellor's decision will not be disturbed since it was not manifestly wrong.

Id. at 308. See also Johnson v. Brewer, 427 So.2d 118, 126-127 (Miss. 1983); McKay v. McKay, 312 So.2d 12, 13-14 (Miss. 1975).
These cases make clear that this Court gives great deference to the decisions of the chancellor concerning findings of fact and especially to the credibility of witnesses. Therefore, it has generally been held by this Court that unless we are of the firm opinion that the chancellor's decision was incorrect or "manifestly in error," the decision of the chancery court will not be overturned.
McMurry, 539 So.2d at 129-130.
The chancellor held that based upon the facts of the case, the parties to the suit had not reached an oral settlement of Travis' worker's compensation claim. Accordingly, the chancellor reached the merits of Travis' bad faith claim. The chancellor found that the actions of Hartford Indemnity did not rise to the level of "bad faith." Based on the record before us, we cannot say that the chancellor was manifestly in error in so holding.
AFFIRMED ON DIRECT AND CROSS APPEALS.
HAWKINS, C.J., PRATHER, P.J., and SULLIVAN, PITTMAN, BANKS, JAMES L. ROBERTS, Jr. and SMITH, JJ., concur.
McRAE, J., dissents with separate written opinion.
McRAE, Justice, dissenting:
I agree with the majority that there was no settlement between Hartford and Travis. However, despite its recitation of facts which clearly illustrate a case of reckless disregard for the claimant's rights and bad faith, the majority glibly finds that the chancellor correctly ruled that Hartford's handling of Travis' claim did not rise to that level. However, Hartford violated its own policies and procedures as well as established industry standards in its handling of this claim.[1] It then used its superior bargaining power to try to coerce the claimant into a settlement which denied, as well as delayed, payment of workers' compensation benefits long after it knew he had a compensable claim. Hartford further acted in bad faith by insisting that Travis forego his right to bring a bad faith claim in exchange for payment of his workers' compensation benefits. Accordingly, I dissent.
Workers' compensation is a statutory scheme intended to provide immediate relief for injured workers. Claims are to be liberally construed in favor of the claimant. The insurer's own policy manual provides that:
Hartford's policy as to workers' compensation claims is to provide promptly to industrial accident victims the benefits to which they are entitled under the appropriate statutes and to demonstrate humanitarian concern for those victims through rendition of assistance toward the relief of hardship and the acceleration of the worker's resumption of a productive role in his employment.
Based on his experiences, Earl Franklin Travis might argue otherwise. He was injured at work on November 22, 1985. As a result *340 of those injuries, Travis entered the hospital on December 2, 1985 and underwent surgery to repair a herniated disc on December 10, 1985. Although Travis incurred thousands of dollars in uncontested medical expenses, Hartford, as far as the record reveals, has never paid either his medical bills or his disability benefits.
Hartford initially claimed that Travis' injury was not work-related. The carrier interviewed his co-workers on March 12, 1986, and learned that the injury, indeed, had occurred at work. Hartford still refused to pay any medical bills or disability benefits. It did, however, set aside reserves, enabling the insurer to benefit from the federal tax write-off of the claim. Hartford, without regard for its own policies and procedures, clearly failed to settle the claim promptly. The majority, however, appears to define anything paid in less than a decade as "prompt."
As early as December, 1986, Hartford's internal correspondence indicates that the insurer knew it had no defense to its failure to pay Travis' claim. A memo from Wayne Duran at Hartford's home office to the claims adjuster, James Napper, in Jackson, Mississippi, states that "while I have felt all along that we probably had a loser on [sic] compensability question once the co-worker's testimony appeared ... and that there would be an award for loss of wage earning capacity, I did feel that claimant would eventually return to some kind of work." Indeed, on January 6, 1987, the Administrative Law Judge found that Travis had an injury and disabilities compensable in the amount of $59,850.00. Hartford did not pay the ordered amount, but offered to settle for $20,000.00.
In April, 1987, after not obtaining the desired result from Travis, Hartford wrote to his physician, Dr. McWillie Robinson, informing him that the claimant's bills had not been paid because he refused to settle his claim. In response, Travis' attorney, Paul Snow, wrote to Hartford, threatening to file a bad faith action. He stated in his April 17 letter:
I find it hard to believe that you would refuse to pay the medical bills and at the same time, incite the doctor's office against the claimant for failure to have the bills paid. This constitutes bad faith in and of itself.
Attorneys for both parties subsequently sought to settle the claim.
Eight months later, the attorneys for the parties negotiated that Hartford would pay $55,000.00 to settle Travis' workers' compensation claims. Hartford's attorney asserted that the alleged "settlement" included any bad faith claims Travis might have against the carrier. Travis' attorney, on the other hand, contends that any attempt at an agreement between the parties was limited to the workers' compensation benefits. By that time, however, even Hartford's attorney, Ben Riddick, had acknowledged that compensability was a dead issue without regard for winning an appeal. He wrote to Napper, the claims adjuster, on December 29, 1987 that:
I have again talked with Attorney Paul Snow and he has confirmed that if we are willing to pay $55,000.00, they would settle the case in full, including future medical under a 9i settlement. This would also include any bad faith action. I feel that this is the best settlement we can get. Our only choices are to proceed with appeal which appears hopeless or we can accept the claim as compensable and pay compensation with penalties up to date and continue paying with the hope that the claimant may attempt to return to work and we would reopen this case.
Paul Snow, Travis' attorney, however, wrote to Riddick on December 30, 1987, confirming that the alleged agreement was limited only to the workers' compensation claims and not any bad faith claims, stating:
This will confirm our agreement to settle the Workmen's Compensation case only for a total payment of medical expenses incurred in the past as a result of this on-the-job injury.
Hartford still refused to pay and continued its "hopeless" appeal. The Mississippi Workmen's Compensation Commission affirmed the ALJ's ruling on January 13, 1988. Riddick then advised Hartford on that same date:
I do not believe there is sufficient grounds in this case to establish a bad *341 faith action for the reason there were arguable reasons to deny the claim. The decision was made, I believe on legal advice. In any event, it may be advantageous to proceed with an appeal and at the same time commence payments pursuant to the Order of the Full Commission. It will require a lump sum payment of 106 weeks plus penalties and interest or a sum of approximately $15,516,00, [sic] leaving 344 weeks for future compensation.
As a result of the failed negotiations, Hartford filed a complaint for declaratory judgment and specific performance on February 22, 1988, in the Hinds County Chancery Court to enforce the alleged oral agreement. See Valley Forge Insurance Co. v. Strickland, 620 So.2d 535 (Miss. 1993) (insurer's meritless subrogation claim was so grossly negligent as to justify punitive damages). Thus, Travis, who had simply filed a routine Workers' Compensation claim, was now faced with defending a lawsuit, as well as an appeal to this Court.[2] He denied that the alleged "settlement" included his bad faith claims and filed a counterclaim, alleging that Hartford had acted in bad faith by not paying his workers' compensation benefits.
Contrary to the chancellor's findings, the record contains considerable evidence that Hartford acted with reckless disregard for Travis' interests and in bad faith in its handling of Travis' claim. Thus, the chancellor was manifestly in error.
In Travelers Indemnity Company v. Wetherbee, 368 So.2d 829 (Miss. 1979), we found that an insurer's exertion of economic pressure on a claimant to achieve a settlement more favorable to the insurer gave rise to punitive damages. Id. at 835. Hartford used its superior bargaining power, in effect, to economically coerce Travis, who had only a sixth grade education and could neither read nor write. It acted contrary even to its established policies and procedures for handling workers' compensation claims. First, after offering Travis less than half the amount the ALJ had found he was entitled to recover, Hartford wrote to his physician advising him that the claimant's bill would not be covered because Travis wouldn't settle! The carrier continued to refuse to pay the claimant's medical expenses or disability benefits when Travis would not accept settlement of his bad faith claim as part of the $55,000.00 alleged agreement.
The exclusivity of the workers' compensation remedy does not bar an injured employee from bringing a bad faith claim against an insurance carrier who wrongfully refuses to pay benefits. Southern Farm Bureau Casualty Insurance Company v. Holland, 469 So.2d 55, 58-59 (Miss. 1984). The record indicates that Hartford's actions were willful and intentional, and not merely negligent. Hartford cannot honestly assert that it had an arguable reason for failing to pay Travis' claim since its own attorney, Reddick, had advised to the contrary. Therefore, Hartford acted in bad faith by attempting to coerce Travis into a settlement which not only paid less than the benefits the Commission and the courts had found he was eligible to receive but also took away a remedy he was entitled to seek.
Hartford further acted in bad faith by failing to pay any benefits after learning that it had no arguable reason for denying coverage. In Harvey-Latham v. Underwriters at Lloyd's, 574 So.2d 13 (Miss. 1990), the insurer refused to pay the policy limit on the property in question because the ramifications of an apportionment clause in the insurance contract were unclear. The apportionment issue had been resolved in September, 1986. Although Lloyd's acknowledged at that time that it owed the $15,000.00 policy limit, it did not tender payment until August, 1987. We stated that "[t]he case is presented as if Lloyd's believed that the rights of the parties became fixed in the early days of the dispute, and that if there was an arguable reason for delay then it would continue indefinitely, regardless of the changing facts." 574 So.2d at 15. In the case sub judice, Hartford initially denied Travis' claim because it asserted that his injury was not work-related, despite the absence of evidence to support that contention. By March 12, 1986, three months after Travis was injured, Hartford had evidence *342 that the claim was work-related and compensable. It was not arguable. Only the extent of Travis' disability remained uncertain. Nevertheless, Hartford refused to pay even Travis' medical bills or temporary total disability benefits. Any arguable reason an insurer gives for denial of a claim should be specifically pleaded, stating when, where and under what circumstances any legal advise was given. Moreover, legal advice given to economically destroy a claimant does not relieve Hartford of any liability. The insurer may seek redress from bad advice of counsel only through that counsel.
Finally, Hartford acted with total disregard for Travis' rights by attempting to use the court system in attempt to reduce or delay its obligations. Travis merely filed for the benefits to which he was entitled under his workers' compensation policy. Hartford, in turn, contrary to its policy of using non-adversarial approaches to settling claims, sued him, not only thrusting him into a lawsuit, but forcing him to incur legal expenses. Further, it deprived him of the compensatory benefits to which he was entitled, impairing his ability to meet his personal obligations. While Miss. Code Ann. § 83-9-5(1)(h)(1) (1972) is not applicable to workers' compensation law, it is of interest that in a health care policy setting, insurance carriers are statutorily required to pay all benefits due under a policy within forty-five (45) days after receipt of the proof of loss. It is negligence per se for a company to violate the statute. Even under a national standard adopted by the National Insurance Commissioners' meeting in 1976 in New Orleans, Louisiana, the company would be required to pay the claim within thirty (30) days or give a written reason why it cannot pay every forty-five (45) days. Surely a statutorily-mandated time frame for payment should also be employed in workers' compensation claims for employees to timely receive the benefits they deserve. If workers are required to relinquish their rights for such small benefits, we ought to insure that the few benefits they receive are obtained as expediently as possible.
In Strickland, supra, we noted that the filing of a meritless subrogation claim did not rise to the level of bad faith as used in breach of contract cases. However, we found that Valley Forge's action was grossly negligent and "sufficiently egregious to justify punitive damages" in the amount of $1,000,000.00. Hartford's suit for declaratory judgment and specific performance on the oral agreement was a no less egregious impingement upon Travis' rights. Bad faith takes many forms. Contrary to the findings of the chancellor and the majority, the evidence indicates that Hartford's actions ran the gamut. Hartford showed reckless disregard for Travis' workers' compensation claim and of course, acted in bad faith. Accordingly, I dissent.
NOTES
[1] The policies Hartford professes to follow are promulgated by the National Workers' Compensation Reinsurance Pool, which has established performance standards for servicing carriers. Hartford's own Workers' Compensation Desk Reference states that when there is a deviation between a company policy and an industry policy or standard, national standards must be complied with.
[2] Travis' workers' compensation claim was appealed to this Court by Hartford and his employer, Magna Corp. in Cause No. 07-CC-59369, and was affirmed per curium on April 11, 1990.