749 So.2d 192 (1999)
Alberta SIMMONS, Appellant,
v.
Josephine S. CLEVELAND, Appellee.
No. 98-CA-00375-COA.
Court of Appeals of Mississippi.
July 27, 1999.
*193 Joe Vandyke, Sardis, Attorney for Appellant.
James McClure, III, Sardis, Attorney for Appellee.
BEFORE THOMAS, P.J., LEE, AND SOUTHWICK, JJ.
LEE, J., for the Court:
¶ 1. This appeal regards a property line dispute between neighbors, Alberta Simmons and Josephine Cleveland, in a subdivision in the town of Como. The Panola County Chancery Court ordered that the property lines be consistent with Cleveland's survey, and Simmons appeals the judgment rendered against her raising the following issues:

*194 I. THAT THE TRIAL COURT ERRED IN ESTABLISHING THE BOUNDARY LINE IN ACCORDANCE WITH CLEVELAND'S SURVEY WHICH DISREGARDED PHYSICAL MONUMENTS.
II. THAT THE TRIAL COURT ERRED BY REFUSING TO CONSIDER THE PROOF OFFERED TO ESTABLISH TITLE THROUGH ADVERSE POSSESSION.
¶ 2. We find that the chancellor was within his discretion in establishing the boundary in accordance with a survey which disregarded physical monuments; however, we find that the trial court was in error in its refusal to consider proof offered to establish adverse possession. Therefore, we reverse and remand.

FACTS
¶ 3. Alberta Simmons and Josephine Cleveland lived in the Pointer Subdivision in the town of Como and had been neighbors since May 1965, sharing a property boundary. In reliance on their undisputed testimony, sparks began to fly between Simmons and Cleveland, and Simmons erected a wooden fence in 1995 adjacent to her driveway between her property and that of Cleveland. The fence ran the entire length of the lot.
¶ 4. Simmons indicated that she did not seek the permission of Cleveland to erect the fence, as she understood it to be located inside of her own property line. Cleveland objected to the placement of the fence and subsequently hired a surveyor to determine the exact location of her property line. In preparation for litigation, Simmons also engaged the services of a surveyor. Neither parties' warranty deeds contained a metes and bounds description of their respective lots, but referenced the official map and plat of the Pointer Subdivision.
¶ 5. The surveyors's results were in disagreement. Cleveland's surveyor stated that the fence was over the property line into Cleveland's side by four feet throughout the length of the fence. Simmons's surveyor likewise stated that the fence encroached upon Cleveland's property, but only by a distance of approximately one foot at the front of the lots. The fence then crossed the property line, making a long, thin "x" approximately mid-length the fence, and was actually located on the Simmons side of the line at the back of the lot.
¶ 6. The testimony of the parties indicated that they were in agreement that the corner of a neighbor's fence that adjoined the disputed properties at the rear actually defined the common back corner of their lots. Both parties also testified that Simmons's driveway had been located in essentially the same place for over twenty years, without the objection of Cleveland. Cleveland's survey, however, established the line to be several feet into the pavement of Simmons's driveway and about two feet from Simmons's house.
¶ 7. Testimony was presented which revealed the differing procedures utilized by the surveyors in arriving at their respective conclusions regarding the location of the boundary line of the two lots. The surveyors began their respective surveys from different points in the subdivision. Also, Simmons's surveyor relied on a particular marker at the rear of their lots, which both parties agreed defined the common back corner of their respective lots, in arriving at his result, whereas Cleveland's surveyor did not utilize this monument in ascertaining the boundary in his survey. Though the parties agreed on the location of the common back corner of their lots, Simmons assertion on appeal that Cleveland's surveyor testified that he too agreed that that marker indicated the back corner of the lots is incorrect. His testimony was incorrectly interpreted by the appellant as referring to the common back corner of the lots in question. This *195 testimony, however, referred to the southwest front corner of Cleveland's lot, which is not even the corner adjacent to Simmons's property. Nevertheless, the testimony of both Simmons and Cleveland was consistent that the back corner of the new wooden fence erected by Simmons was on Simmons's side of the marker agreed by them to define the common back corner of their property.
¶ 8. In taking all the testimony and evidence into account, the court deferred to Cleveland's survey, divesting Simmons of 714.6 square feet of her property, which includes a portion of her driveway that she had used for twenty years. Also, during the trial, Simmons brought forth a motion, ore tenus, to conform the pleadings to the allegations of adverse possession. At the end of the presentation of testimony, the court ruled that there would be no consideration as to adverse possession. Simmons thus appeals the trial court's decision on the foregoing assertions of error.

LAW
¶ 9. This Court's scope of review requires the application of the substantial evidence/manifest error test to questions of fact. Johnson v. Black, 469 So.2d 88, 90 (Miss.1985). As the court in Johnson stated:
It requires little familiarity with the institutional structure of our judicial system to know that this Court does not sit to redetermine questions of fact. Our scope of review is severely limited.... Suffice it to say that we have no authority to grant appellant any relief if there be substantial credible evidence in the record undergirding the determinative findings of fact made in the chancery court.
Johnson, 469 So.2d at 90 (citations omitted). This standard of review is also enunciated in Travis v. Hartford Accident & Indem. Co., 630 So.2d 337, 338 (Miss.1993) (quoting Richardson v. Riley, 355 So.2d 667 (Miss.1978)):
The principle of law with which we are concerned has been repeated by this Court many times. It is that where the chancellor was the trier of facts, his findings of fact on conflicting evidence cannot be disturbed by this Court on appeal unless we can say with reasonable certainty that these findings were manifestly wrong and against the overwhelming weight of the evidence. Even if this Court disagreed with the lower court on the finding of fact and might have arrived at a different conclusion, we are still bound by the chancellor's findings unless manifestly wrong, as stated above.
¶ 10. With questions of law, the scope of review is de novo. Planters Bank & Trust Company v. Sklar, 555 So.2d 1024, 1028 (Miss.1990).

I. DID THE TRIAL COURT ERR IN ESTABLISHING THE BOUNDARY LINE IN ACCORDANCE WITH CLEVELAND'S SURVEY WHICH DISREGARDED PHYSICAL MONUMENTS?
¶ 11. Simmons argues that it was error to establish the boundary between the properties in accordance with a survey which disregarded any reference to physical monuments. She does not, however, cite authority for this argument. Therefore, consideration of this argument on appeal is precluded. See Grey v. Grey, 638 So.2d 488, 491 (Miss.1994) (citing Estate of Mason, 616 So.2d 322, 327 (Miss.1993)); R.C. Petroleum, Inc. v. Hernandez, 555 So.2d 1017, 1023 (Miss.1990); Kelly v. State, 553 So.2d 517, 521 (Miss.1989); Brown v. State, 534 So.2d 1019, 1023 (Miss. 1988); Shive v. State, 507 So.2d 898 (Miss. 1987); Pate v. State, 419 So.2d 1324 (Miss. 1982). Furthermore, even if Simmons were not barred from raising this issue, the argument would fail on its merits.
¶ 12. Simmons bases this point of her appeal on the reliability of her own survey and the trial court's disregard of the existing physical monuments evidencing the correct location of the parties's common *196 boundary line. The chancellor stated that he based his decision to rely on Cleveland's survey as opposed to Simmons's survey on the credibility of the surveyors' testimony at trial as experts in their field. He noted that Cleveland's surveyor was very familiar with the Pointer Subdivision, having surveyed lots in that neighborhood at least fifteen times over the years, whereas Simmons's surveyor had never conducted a survey in the Pointer Subdivision before. Cleveland's surveyor therefore had the benefit of information he had accumulated during the previous surveys at his disposal in determining the location of points referred to in the plat. There was much testimony regarding the two surveys by the two engineers who actually surveyed the property. The chancellor stated that most of the consideration he gave in determining the property line came from this evidence. He expressly recognized both surveys. Simmons makes quite a fuss in comparing the two surveys; however, after applying the substantial evidence/manifest error test, stated in Johnson, 469 So.2d at 90, we hold that the record shows that substantial credible evidence exists supporting the chancellor's judgment of this issue, so that the decision was not manifestly erroneous. The surveys were made by two registered land surveyors, and it was within the chancellor's purview to recognize one survey and reject the other. We therefore find that the trial court has committed no error on this issue.

II. DID THE TRIAL COURT ERR BY REFUSING TO CONSIDER PROOF OFFERED TO ESTABLISH TITLE THROUGH ADVERSE POSSESSION?
¶ 13. At the end of the presentation of evidence in this case, the court made its ruling from the bench, recognizing that Simmons had brought forth a motion, ore tenus, to conform the pleadings to the allegations of adverse possession offered into the record. The court then stated that "there will be no consideration as to adverse possession at all," reasoning that such a holding requires proof in great detail. While it is correct that the standard to establish title by adverse possession in Mississippi is by clear and convincing evidence, West v. Brewer, 579 So.2d 1261, 1262 (Miss.1991), we find that there is ample evidence in the record to justify an examination of that evidence more closely instead of having dismissed it offhandedly. The proof of adverse possession requires the presence of those certain elements in Miss.Code Ann. § 15-1-13(1) (Supp.1998) as supported by relevant authority. Trotter v. Gaddis and McLaurin, Inc., 452 So.2d 453, 456 (Miss.1984), recites the six fundamental elements which are necessary to constitute an effective adverse possession claim. "There must be possession which is (1) under claim of right, (2) actual, (3) open, notorious, and visible, (4) exclusive, (5) continuous and uninterrupted for ten years, and (6) peaceful." See also Houston v. U.S. Gypsum Co., 652 F.2d 467 (5th Cir.1981), Florida Gas Exploration Co. v. Searcy, 385 So.2d 1293 (Miss.1980), and Eady v. Eady, 362 So.2d 830 (Miss.1978). "[M]ere possession is not sufficient to satisfy the requirements of open and notorious possession." Craft v. Thompson, 405 So.2d 128 (Miss.1981); see People's Realty & Development Corp. v. Sullivan, 336 So.2d 1304 (Miss.1976). Trotter, 452 So.2d at 457.
¶ 14. Under claim of Right: Simmons built her driveway on the south end of her lot, fully believing that it was on her property. This state has long held that the claim of title through adverse possession must be through acts sufficient to fly the "flag on the land, and keep it flying, so that the (actual) owner may see, and if he will that an enemy has invaded his domains, and planted the standard of conquest." Blankinship v. Payton, 605 So.2d 817, 820 (Miss.1992). It appears that Simmons's act of surfacing a portion of another's land for driveway purposes for personal parking use is an act sufficient to put Cleveland on notice of Simmons's claim of ownership.
*197 ¶ 15. Actual: Actual possession has been held to mean "effective control over a definite area of land, evidenced by things visible to the eye or perceptible to the senses." Id. at 819-20. The driveway ran almost adjacent to the south end of what Simmons understood to be her property and it was clearly visible. She and her family used it on a daily basis. The placement of the driveway was on the same portion of land that Cleveland is claiming as her own. It seems that there is evidence in the record to support that Simmons's use of the driveway was sufficient to satisfy this element.
¶ 16. Open, notorious, and visible: The Simmons's driveway was clearly visible to Cleveland. It was apparent that her family used it on a daily basis. In fact, it was her very observation of the use of the driveway and adjacent area that precipitated this action. Cleveland herself testified that it was an altercation with Simmons's son, who had allegedly driven too far to the south of the driveway and on to the Cleveland property to park his car, that first caused her to question the property line. Because she perceived this as an encroachment onto her property, she called the police to complain. She then hired the surveyor, who found the property line to be inside the pavement of Simmons's driveway. The evidence is undisputed that for some twenty years, the placement of the driveway was in all aspects open, notorious, and visible.
¶ 17. Continuous and uninterrupted for a period of ten years: Testimony was uncontradicted that the driveway had been in essentially the same place for twenty years or more. There was an issue brought forth regarding the fact that Simmons had only been the title holder of record for a short time and that her period of ownership fell short of the ten continuous years. However, Simmons testified that title had been in her husband's name since 1965, and that when he died, it passed to her and her two children. The children then deeded their interest to her, vesting her with ownership in fee simple. Simmons had lived in the house for thirty years and evidence is consistent that Simmons and Cleveland had been neighbors for thirty years. Mosley v. Clark, 362 So.2d 615, 617 (Miss.1978), clearly allows Simmons to tack her (adverse) possessory interest to that of her predecessor in title. Evidence of Simmons length of occupancy of the disputed area of property is undisputed to be considerably more than the ten years required by Mississippi law.
¶ 18. Exclusive: The Simmons's driveway was constructed for their private and personal use. It served no purpose other than to the Simmons family and its guests. There was no evidence presented to indicate that the Clevelands used the driveway or that it serviced any portion of their property.
¶ 19. Peaceful: The evidence is clear that the use of the driveway was peaceful. The drive was constructed about twenty years prior to trial, and no one had objected to its placement. The parties lived without a boundary dispute from 1965 until 1995. It was only after an altercation between Cleveland and Simmons's son that the fence was erected and the dispute arose. Cleveland's failure to cry "foul" when the driveway was originally placed is evidence of her tacit acceptance of its location. Also, the parties' manifested an acceptance that the common back corner formed one point of their boundary. The record is not clear as to how long the parties have accepted this as their common boundary; however, adjoining landowners who occupy their respective premises up to a certain line, if continued for a sufficient length of time, are precluded from claiming that the boundary thus recognized and acquiesced in is not the true one. York v. Haire, 236 Miss. 711, 112 So.2d 245, 246 (1959). Evidence clearly exists to support that the use of at least a portion of the property in dispute was peaceful.

*198 CONCLUSION
¶ 20. With evidence having been presented as to each and every element of adverse possession, we find that the trial court was manifestly in error in declining to consider it in any way. Because there is ample evidence to support that title had vested in Simmons by adverse possession to that portion of the disputed property where Simmons's driveway is located, we so conclude, and we reverse and render. We reverse and remand for a determination of the boundary of the driveway and for a further determination which may or may not include adverse possession as to the portion of the disputed property line beginning at the end of the driveway and running to the back of the two lots.
¶ 21. THE JUDGMENT OF THE PANOLA COUNTY CHANCERY COURT IS REVERSED AND REMANDED FOR PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION. ALL COSTS OF APPEAL ARE ASSESSED TO APPELLEE.
KING, P.J., BRIDGES, DIAZ, IRVING, PAYNE, AND THOMAS, JJ., CONCUR.
McMILLIN, C.J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY SOUTHWICK, P.J.
MOORE, J., NOT PARTICIPATING.
McMILLIN, C.J., CONCURRING IN PART AND DISSENTING IN PART:
¶ 22. I would concur with the Court's decision to reverse and render on adverse possession solely as to that part of the Simmons driveway that encroached onto the Cleveland property. There should be clarification, however, that, except for issues of adverse possession, the line between Simmons and Cleveland would be as established by the survey of Cleveland's surveyor, Monroe Short and not Simmons's surveyor. This would, therefore, be a very limited remand to determine exactly what property south of the line as surveyed by Short was acquired by adverse use of the driveway itself. Evidence of adverse possession of any other portion of the property was so lacking that, in my view, we intrude on the proper role of the trial court when we substitute our collective opinion for that of the chancellor to conclude that Simmons might have gotten in enough evidence to show adverse possession of some part of the property not used for driveway purposes. Having no valid claim to any part of the Cleveland property under color of title, Simmons's "title by adverse possession, if any, runs only to such part of the land as was actually held by [her] in possession or enclosed or otherwise actually and continuously occupied by [her] for the statutory period of ten years." Page v. O'Neal, 207 Miss. 350, 355, 42 So.2d 391, 392 (1949). The standard for proving adverse possession is high. It must be established by clear and convincing evidence. Stallings v. Bailey, 558 So.2d 858, 859 (Miss.1990). In this case, the parties were actually trying a land line case based almost exclusively on the competing evidence of two surveyors who could not agree on a proper point of beginning to survey a lot in the subdivision. The question of adverse possession was not before the court on the pleadings. Evidence relating to the principles of law governing adverse possession came in, not by the design of the parties, but almost coincidentally. It required a post-evidence motion by Simmons to even get the matter before the chancellor for consideration. The only evidence (except testimony concerning the location of the driveway) that might possibly have related to adverse possession of other portions of the property consisted of inconclusive testimony regarding the location of the back corner constituting Simmons' southeast corner and Cleveland's northwest corner. There was no testimony from Simmons to show where the property line she contended for ran from this corner or to show who had "flown the flag" of ownership over any part of the land outside the driveway itself. *199 The driveway ended at the front of Simmons's home because she admitted that, even if the line were where she contended it to be, it ran so close to her home that it was impossible to drive a vehicle up that side of her home without encroaching on Cleveland. On those facts, the chancellor was entirely correct in finding an absence of a legitimate issue of adverse possession with the limited exception of the driveway area. Simply because the majority disagrees with the chancellor's conclusions on the narrow issue of the driveway encroachment, that does not constitute a basis to reopen those parts of the chancellor's decision that are entirely correct. Therefore, I dissent insofar as the majority proposes to permit Simmons a second attempt to prove adverse possession of any property lying outside the driveway.
¶ 23. I also write separately to point out that both surveyorsone testifying for Simmons and one testifying for Clevelandwere of the opinion that Simmons's recently-erected wooden fence encroached onto the Cleveland property. The only real difference in the two experts' testimony on that score was whether the fence encroached one foot or as much as four feet onto Cleveland, and none of the evidence touching on adverse possession even faintly suggests that the driveway itself extended as far south as this fence. Therefore, the majority errs, in my view, when it fails to affirm that portion of the chancellor's judgment directing the immediate removal of the fence. By prolonging the implementation of that relief any further, this Court does a disservice to Cleveland by permitting a continuing encroachment that is, beyond dispute, wrongful. It is the common practice of this Courtone that is laudatory in its effectto bring as much finality as possible to an appeal, even when reversal is required, by affirming so much of the chancellor's decision as can properly be accomplished and remanding only for those limited matters essential to the final resolution of all disputed issues. The evidence coming from both sides demonstrated beyond question that the fence encroached onto the Cleveland property. The chancellor's decision to order removal of the fence was, thus, supported by the overwhelming weight of the evidence. A cursory review of photographic Exhibit 3 introduced at trial demonstrates that, no matter how much of the disputed area used by Simmons as a driveway may ultimately be awarded to her on remand, it could not possibly extend as far south as the wooden fence. Cleveland ought to be entitled to have the fence removed without further delay.
¶ 24. In summary, I dissent as to the propriety of permitting evidence of adverse possession of any part of the property beyond that used by Simmons as a driveway, and I dissent as to the majority's failure to affirm the chancellor's judgment ordering the timely removal of the encroaching wooden fence. I concur in the decision to remand for the very limited purpose of (a) determining what part of the Simmons driveway lies on the Cleveland side of the property line as established by the Monroe Short survey, and (b) awarding Simmons title to that property by adverse possession.
SOUTHWICK, P.J., JOINS THIS SEPARATE WRITTEN OPINION.