797 So.2d 352 (2001)
Willie C. BRADFORD, Ruth Aviles a/k/a Ruth Nash Thomas, Eugene Hairston, Patricia Robinson, Vary Addington, Erwin Williams, Sherry Denise Williams, Carmen Gale Harrell, Eric A. Williams, Betty R. McCrary, Doris Smith Boyd, Adam Whitfield, Ruby Jones, Curtis L. Smith and Denis Boyd, Appellants,
v.
E.B. WILLIAMS, Jr. and wife, Jean S. Williams, Appellees.
No. 2000-CA-00227-COA.
Court of Appeals of Mississippi.
April 10, 2001.
*353 Gary L. Geeslin, Columbus, Attorney for Appellants.
Gary Goodwin, Columbus, Douglas Dalrymple, Attorneys for Appellees.
Before KING, P.J., PAYNE, and MYERS, JJ.
MYERS, J., for the Court:
¶ 1. The descendants of Jesse Nash appeal the decision of the Lowndes County Chancery Court in which the court found title to a certain tract of land to be vested in E.B. Williams, Jr., and Jean S. Williams, the appellees, by way of adverse possession. The appellants contend that, in reaching his decision, the chancellor erroneously placed the burden of proof upon the record owners, rather than the adverse possessors, to prove that there was no adverse possession. Finding no error, we affirm.

FACTS
¶ 2. On February 2, 1881, Jesse Nash acquired title to a certain tract of land in Lowndes County, Mississippi. This property, with some minor exceptions, has passed to his descendants through intestate descent and distribution. The property was occupied by various descendants of Nash until 1952, but none have occupied it since that time. In 1962, the Williamses purchased a tract of land just south of and tangent to the Nash land. County records indicate that these two parcels are demarcated by the section line between Section 31, Township 18, Range 17 West and Section *354 6, Township 19, Range 17 West. At some point prior to 1962, a public road known as Oswalt Road was constructed, running from east to west along this section line. However, as it crosses the property of the parties, Oswalt Road bows northward in such a way as to separate a 1.12 acre portion of the Nash property from the larger portion of the tract.
¶ 3. Testimony at trial indicated that, until early 1999, all interested parties were under the impression that Oswalt Road marked the boundary line between the two tracts. At this time, Mr. Willie C. Bradford, one of the Nash descendants, received information which led him to believe that a portion of the Nash land was on the south side of Oswalt Road. When he discovered that Four County Electric Power was cutting timber on the disputed tract for the purpose of running a power line, Mr. Bradford informed the power company that it was his land and demanded that they cease their operations on it. Four County then informed the Williamses of the problem. This was apparently the Williamses first notice of any dispute as to the ownership of the 1.12 acre parcel.
¶ 4. The Williamses subsequently instituted an action in the Lowndes County Chancery Court to quiet title to the disputed parcel. The chancellor found that title to such land had vested in the Williamses via adverse possession, and the descendants of Nash timely executed this appeal.

DISCUSSION

I. DID THE CHANCELLOR ERRONEOUSLY SHIFT THE BURDEN OF PROOF FROM THE ALLEGED ADVERSE POSSESSORS TO THE RECORD OWNERS?

Standard of Review
¶ 5. This Court operates on a limited standard of review when addressing appeals from a chancery court. We will not disturb the findings of the chancellor unless he "was manifestly wrong, clearly erroneous or applied an erroneous legal standard." Goode v. Village of Woodgreen Homeowners, Ass'n, 662 So.2d 1064, 1070 (Miss.1995). Furthermore, we have stated that:
In most boundary disputes, the chancellor is presented with a considerable amount of evidence by both parties which he must evaluate and then make a decision on which side to believe. It is not the position of this Court to redetermine questions of fact resolved by the chancellor. Johnson v. Black, 469 So.2d 88, 90 (Miss.1985). If the record contains substantial, credible evidence to support the findings of fact made in chancery court, this Court will not reverse the chancellor's decision. Id.

Mathews v. Hale, 767 So.2d 231, 233 (¶ 6) (Miss.Ct.App.2000). Thus, the issues to be resolved for the disposition of this case are whether the chancellor applied the correct legal standard and whether there was substantial evidence to support the ruling of the chancellor.

The Law
¶ 6. In order to succeed on a claim of adverse possession it is necessary to prove six elements by clear and convincing evidence. "The claimant must prove that his possession or occupancy of the property was: (1) under claim of ownership; (2) actual or hostile; (3) open, notorious, and visible; (4) continuous and uninterrupted for a period of ten years; (5) exclusive; and (6) peaceful." Hearn v. Shelton, 762 So.2d 792, 794(¶ 6) (Miss.Ct. App.2000) (citing West v. Brewer, 579 So.2d 1261, 1262 (Miss.1991)). Also,
[t]he burden of proof is on the adverse possessor to show by clear and convincing evidence that each element is met. *355 The question in the end is whether the possessory acts relied upon by the would-be adverse possessor are sufficient to put the record title holder upon notice that the lands are held under an adverse claim of ownership.
Cheatham v. Stokes, 760 So.2d 795, 799 (¶ 23) (Miss.Ct.App.2000) (citing Peagler v. Measells, 743 So.2d 389, 390 (Miss.Ct.App. 1999)).
¶ 7. This Court has stated that "the claim of title through adverse possession must be through acts sufficient to fly the `flag on the land, and keep it flying, so that the (actual) owner may see, and if he will that an enemy has invaded his domains, and planted the standard of conquest.'" Simmons v. Cleveland, 749 So.2d 192, 196(¶ 14) (Miss.Ct.App.1999) (quoting Blankinship v. Payton, 605 So.2d 817, 820 (Miss.1992)). In Simmons, this Court found the would-be adverse possessor's act of surfacing a portion of another's land for driveway purposes for personal parking use is an act sufficient to put the owner of record on notice of the adverse possessor's claim of ownership. Id. "Actual possession has been held to mean `effective control over a definite area of land, evidenced by things visible to the eye or perceptible to the senses.'" Simmons, 749 So.2d at 197 (quoting Blankinship, 605 So.2d at 819-20). Furthermore, the Mississippi Supreme Court has held that
[i]t is the fact of adverse possession and a claim of ownership for the statutory period that confers title, and not the real fact as to the existence of the line, nor does the fact of the payment of taxes by the plaintiff, during this period, on the land by proper description, alter the defendant's rights of adverse possession.
Daniels v. Jordan, 161 Miss. 78, 84, 134 So. 903, 904 (1931), reiterated in Board of Educ. of Itawamba County v. Loague, 405 So.2d 122, 125 (Miss.1981).

The Evidence
¶ 8. The Williamses both testified that they purchased land adjacent to the disputed 1.12 acre tract in 1962, and that since that time, they have acted as though the disputed tract was in fact part of their land. They further testified that, in 1963 or 1964, Mr. Williams constructed a fence along the south shoulder of Oswalt Road, which is also the north side of the disputed tract. Both of them testified that they ran a six inch water line through the disputed tract. They also testified that from 1963 or 1964 up until some time in the 1980's, they maintained a fence which surrounded the disputed tract along with the land to which they hold record title, and that they utilized all of the land within the fence for such activities as grazing cattle and planting crops. Four disinterested parties also gave testimony indicating that the fence was in place and that the land was so used during that period. The Williamses also testified that they continued to farm the land after the fence was taken down up until the time when the conflict arose. The Williamses both declared that they had no knowledge of any claim of ownership by the appellants up until a few months before the trial.
¶ 9. Three appellants testified at trial, all of whom indicated that they themselves had no knowledge of the Williamses possession of the disputed land. Each of them also testified that they did not become aware of the fact that they themselves were the record owners of the land until less than a year prior to trial. Adam Whitfield, who is named as an appellant but who at trial asserted that his interest in the property no longer existed, testified that he had observed the disputed property as early as 1982 and that he had never seen a fence surrounding such property. Willie Bradford testified that he had observed *356 the disputed property since 1977 and had never seen a fence on it. Bradford also testified that he and other members of his family had paid the taxes on the disputed land since 1881. Betty McCrary testified that she visited the Nash property about once a year and never observed a fence on the disputed tract. She also testified, however, that she did not travel Oswalt Road en route to the family property. McCrary also testified that her family never farmed the disputed tract of land.
¶ 10. Having heard all of this evidence, the chancellor made the following findings:
[T]he Plaintiffs enjoyed complete and total possession of the 1.12 acre tract from sometime in 1962 until the summer of 1999. That during that time the Plaintiffs erected and maintained a fence, ran cattle on, cut hay on, planted soybeans on and bush hogged this strip continuously for at least 10 years ... [These activities] were sufficient to "fly the flag" of ownership and put [the owners of record] on notice that this strip was held under an adverse claim of ownership. Therefore, this Court finds the Plaintiffs have met their burden of proof.

Analysis
¶ 11. The findings of the chancellor are based upon his interpretation of the evidence presented before him in open court, and there is substantial evidence to support these findings. He was presented with conflicting evidence from both sides, and he evaluated such evidence and then made "a decision as to which side to believe." Johnson v. Black, 469 So.2d at 90. Furthermore, the chancellor applied the correct legal standard here. He recognized that the burden fell upon the Williamses to establish each element of adverse possession, and he found that this burden had been satisfied. We agree with the chancellor that the activities which he found to have taken place on the disputed tract of land were sufficient to put the record owners on notice of an adverse claim of right.
¶ 12. The appellants are apparently troubled by the chancellor's "repeated reference to lack of objection or complaint" on the part of the owners of record. They argue that this was an indication that the chancellor placed upon them a burden to prove one of the elements. However, the finding that there was a "lack of objection" on the part of the appellants is simply indicative that the "peaceful" requirement of adverse possession is satisfied. Simmons, 749 So.2d at 197.
¶ 13. For the reasons stated above, we affirm.
¶ 14. THE JUDGMENT OF THE LOWNDES COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
McMILLIN, C.J., KING and SOUTHWICK, P.JJ., PAYNE, BRIDGES, THOMAS, LEE, IRVING and CHANDLER, JJ., concur.