920 So.2d 497 (2006)
HARRISON COUNTY DEVELOPMENT COMMISSION, Appellant
v.
Henry W. KINNEY, Appellee.
No. 2004-CA-00901-COA.
Court of Appeals of Mississippi.
January 17, 2006.
*498 Walter James White, Gulfport, Henry Allen, attorneys for appellant.
Reilly Morse, Gulfport, attorney for appellee.
Before KING, C.J., CHANDLER and BARNES, JJ.
KING, C.J., for the Court.
¶ 1. On September 12, 2000, the Harrison County Development Commission (HCDC) and F.E.B. Distributing Company, Inc. (FEB)[1] filed a complaint for declaratory *499 judgment in the Harrison County Chancery Court against Henry W. Kinney, asking the court to find that HCDC and FEB had complied with all of Kinney's public records requests. The chancellor found that HCDC willfully and knowingly denied Kinney access to certain records not exempt under the Public Records Act ("Act"). HCDC was then ordered to produce those records not specifically exempt, and pay a $100 civil penalty, as well as $8,160 in attorney's fees. After denying HCDC's motion for reconsideration, the chancellor awarded Kinney an additional $2,205 in attorney's fees. After providing Kinney with most of the records ordered by the chancellor, HCDC appeals three issues for this Court's consideration:
(1) Whether the chancellor erred in ordering production of gross salary information and accrued time leave from Michael Olivier's file;
(2) Whether the chancellor erred in holding that HCDC willfully and knowingly denied Kinney access, imposing a $100 penalty and $10, 365.00 in attorney's fees; and
(3) Whether the Court erred in denying HCDC's Request for Protective Order
Finding no error in the chancellor's decision, we affirm.

FACTS
¶ 2. HCDC is a political subdivision of the State of Mississippi, organized pursuant to Mississippi Code Annotated §§ 59-9-1 to -89 (Rev.2004). Its mission is the economic and industrial development of Harrison County, Mississippi. HCDC manages four industrial parks and one commercial park. It is governed by twelve appointed commissioners. Executive director, Michael Olivier, is responsible for day to day operations.
¶ 3. Henry Kinney, a Harrison County resident who lives about 5/8 of a mile from HCDC's Long Beach Industrial Park in Pass Christian, initially became interested in HCDC upon the clearing of land in HCDC's park that would become the aggregate distribution plant of Conrad Yelvington Distributors, Incorporated (Yelvington)[2]. Wanting more information about the plant and HCDC, Kinney made several requests to HCDC for access to its public records. Kinney's first request on December 21, 1999 asked for the following:
(1) All files, records, books, and/or correspondence of any nature or kind whatsoever having to do with the construction of a railroad spur by or for the Harrison County Development Commission in or near the Long Beach Industrial Park. This request should include, but is not limited to, any and all files, records, and/or correspondences involving the Harrison County Development Commission and any Federal or other governmental agency that issued grants or other financial or technical assistance for the construction of the railroad spur located in or near the Long Beach Industrial Park. Further, this request should include, but is not limited to any and all engineering reports and/or studies in connection with this railroad spur referenced above.
(2) Any and all files, records, books and/or correspondence of any nature of kind whatsoever having to do with the appointment and terms of all of the Commissioners of the Harrison County Development Commission. This request *500 includes, but is not limited to, files that show the term of each Commissioner. I also request any and all records of attendance of the Commissioner[s] on the Harrison County Development Commission beginning on January 1, 1997, to date.
(3) Any and all files, records, books, and/or correspondence of any nature of kind whatsoever, including engineering reports involving the Harrison County Development Commission and the United States Corps of Engineers for property in or adjacent to the Long Beach Industrial Park.
(4) Any and all reports, audits, or accounting statements or letters or correspondence involving the auditors or bookkeepers of the Harrison County Development Commission for the years 1996 to date. This request should include any correspondence between the auditors and the Development Commission. This request should also include all audits or statement of accounts prepared by outside auditors for the Harrison County Development Commission for the like period of time.
(5) All invoices of Brown & Mitchell to the Harrison County Development Commission or for the account of the Harrison County Development Commission from January 1, 1997 to date.
(6) The entire personnel file of Michael Olivier.
(7) The entire bookkeeping and accounting file for payments of any nature or kind whatsoever for Michael Olivier from January 1, 1997, to date. Included in this request are records of any payments to Michael Olivier for automobile allowance, deferred compensation, disability and/or reimbursements. This should include, but is not limited to, copies of all receipts for all claims for reimbursements.
(8) Any and all correspondence between the Harrison County Development Commission and the Attorney General of the State of Mississippi from January 1, 1997, to date. This request should include any request for opinions from the Harrison County Development Commission to the Attorney General for the State of Mississippi and response thereto for this time period.
¶ 4. Pursuant to the Mississippi Public Records Act ("Act"),[3] HCDC had previously adopted a policy for making public records within its possession accessible to the public.[4] Based on its policy, HCDC granted Kinney's request on December 30, 1999, and informed him of his right to inspect the documents on January 7, 2000. However, HCDC held that Michael Olivier's personnel file was exempt under the Act. Kinney reviewed HCDC's minute books on January 11, 2000, and received ninety-two pages of requested documents on January 18, 2000. Pursuant to HCDC's policy, the reproduction costs for the ninety-two pages totaled $46.
¶ 5. After the inspection, Kinney and HCDC exchanged several correspondence, beginning with Kinney's letter of July 21, 2000, in which he complained that he had only been provided HCDC's minute books for 1998 and 1999. HCDC then responded *501 on July 24, 2000, stating that Kinney's requests were overly broad and required an undue burden on HCDC's staff. HCDC also claimed that some of Kinney's requests contained proprietary information of third parties in violation of the Act. HCDC responded specifically to each of Kinney's requests by claiming that the information was either given to Kinney, contained in HCDC's minutes, or was exempt under the Act.
¶ 6. HCDC wrote Kinney again on August 29, 2000 answering each of Kinney's requests. In response to Kinney's requests regarding the railroad spur and the Corps of Engineers, HCDC informed him that it was necessary to prepay a $65 per hour staff cost, and to coordinate an appointment with staff for the production of the documents which HCDC agreed to produce.
¶ 7. HCDC reviewed Kinney's requests again and its attorneys provided Kinney with the following categorical supplemental responses in a letter from August 31, 2000:
Response (1): The Harrison County Development Commission staff has assembled, from storage, voluminous documents regarding the EDA Grant for the construction of the railroad spur. These documents will be made available for your inspection. Otherwise, there is no specific file with regard to the railroad spur for the Long Beach Industrial Park. Before this inspection will be permitted, you will be required to advance the cost of staff at the rate of $65.00 an hour and if you request copies, you must prepay copy cost.
Response (2): This information has been provided to you previously. Nonetheless, the following is a list of all commissioners which includes the authority which appointed them and the date their respective terms expire. Otherwise, no files exist with regard to the commissioners. Finally, as I stated in my letter of July 24, 2000, the minute books reflect the attendance of the various commissioners for the entire time frame requested; this information is not otherwise compiled.
Response (3): As I stated in my July 24, 2000 correspondence, the only document which falls into the category requested that the Development Commission can identity is the master permit granted by the United States Army Corps of Engineers for the entire Long Beach Industrial Park. It will be necessary again, for you to prepay the cost of staff in permitting this inspection, as well as copy cost as set forth in response described in paragraph [1] above.
Response (4): You were provided with all copies of all the information you requested in paragraph (4).
Response (5): The Commission is not producing the documents you seek in paragraph 5 other than by giving you access to its minute books and audit records which reflect any and all sums paid to Brown & Mitchell. The Development Commission does not maintain records of invoices paid beyond the compilation of its annual audit. Individual invoices contain proprietary and/or confidential information which will not be produced.
Response (6): The personnel files of public employees are exempt from production by Mississippi Law.
Response (7): The Commission is not producing the documents you seek in paragraph [7] other than by giving you access to its minute books and audit records with reflect any and all sums paid to Michael Olivier. The receipts and records for reimbursement would include proprietary and/or confidential information and will not be produced.

*502 Response (8): There is no such correspondence.
¶ 8. After answering Kinney's request on August 31, 2000, HCDC informed Kinney that he would receive no further records until he paid the outstanding $46 copy charge for the ninety-two pages of materials he received on January 18, 2000. HCDC then filed its complaint for declaratory judgment on September 12, 2000, and Kinney paid the copy charge on September 15, 2000. Aggrieved by the chancellor's findings on February 10, 2004, HCDC appeals.

DISCUSSION
¶ 9. This Court employs a limited standard of review when reviewing a chancellor's findings of fact. Bradford v. Williams, 797 So.2d 352, 354(¶ 5) (Miss.Ct. App.2001). We will not disturb the findings of the chancellor unless he was manifestly wrong, clearly erroneous, or applied an erroneous legal standard. Id. Questions of law are reviewed de novo. Burnett ex rel. Islam v. Burnett, 792 So.2d 1016, 1019(¶ 6) (Miss.Ct.App.2001). HCDC only raised issue with one of Kinney's eight request. Therefore, we will only discuss that issue in terms of compliance with the statute.

1. Whether the chancellor erred in ordering production of gross salary information and accrued time leave from Michael Olivier's file

¶ 10. By the Public Records Act, Mississippi has declared as its public policy that public records be generally made available for viewing by any member of the public. Miss.Code Ann. § 25-61-1 (Rev. 2003). Accordingly, allowing access to public records is a duty of the public bodies of Mississippi. Id. In interpreting this chapter, our supreme court has held that any questions of disclosure must be construed liberally, while a standard of strict construction must be applied to any exceptions to disclosure. Mississippi Dep't of Wildlife, Fisheries and Parks v. Mississippi Wildlife Enforcement Officers' Ass'n, Inc. 740 So.2d 925, 936 (¶ 32) (Miss.1999). Any doubt about disclosure of the requested information by the public body should be resolved in favor of disclosure. Id. Our supreme court has also held that compensation information of public employees, such as gross salary and accrued leave time, is subject to disclosure. Id.
¶ 11. In his findings, the chancellor held that Olivier's personnel file was exempt from disclosure pursuant to Mississippi Code Annotated § 25-1-100(1) (Rev.2003)[5]. However, the chancellor ordered HCDC to release Olivier's gross salary and accrued leave time, as required by the Act. While acknowledging that Olivier's gross salary and accrued leave time are indeed subject to disclosure, HCDC claims that this information should not be released to Kinney since he did not specifically ask for it pursuant to HCDC's public records policy (See page 4 n. 4). Although Kinney did not specifically ask for Olivier's gross salary and accrued leave time, he did ask for Olivier's "personnel file." We think that a general request for a personnel file would include a request for gross salary information, as well as accrued leave time. When a public record is held to be exempt, but also contains material which is not exempt, the public body has a duty to separate the exempt material and *503 make the nonexempt material available for examination and/or copying. Miss.Code Ann. § 25-61-9(2) (Rev.2003). HCDC should have separated information on Oliver's gross salary and leave time from his personnel file and disclosed any non exempt material to Kinney. This issue is without merit.

2. Whether the chancellor erred in holding that HCDC willfully and knowingly denied Kinney access, imposing a $100 penalty and $10, 365 in attorney's fees

¶ 12. Any person who shall willfully and knowingly deny to any person access to any public record, which is not exempt from the provisions of the Public Records Act, shall be liable civilly in a sum not to exceed $100, plus all reasonable expenses incurred by such person bringing the lawsuit. Miss.Code Ann. § 25-61-15 (Rev.2003). HCDC claims that it should be entitled to a presumption of good faith as a matter of public policy because of its efforts in trying to accommodate Kinney's requests. Additionally, HCDC claims that its filing of the declaratory judgment action alone is demonstrative of its good faith efforts.
¶ 13. In imposing the civil penalty, the chancellor held that HCDC's requirement that Kinney pay a staff fee of $65 per hour was improper. Mississippi Code Annotated § 25-61-7(1) (Rev.2003) authorizes a public body to establish and collect fees reasonably calculated to reimburse the body for the actual cost of searching, reviewing, and/or duplicating records. However, these costs shall not exceed actual costs, and shall be collected by the body in advance of complying with the request. Id. HCDC's public records policy does not impose a fee for gathering and/or searching for documents. (See page 4 n. 4). A change in the policy would require action by HCDC's commissioners. Olivier unilaterally required Kinney to advance the $65 per hour staff fee to search for records when this fee was not a part of HCDC's public records policy, as required by the Act. Since the $65 per hour fee was not a part of HCDC's public records policy, it could not be unilaterally added by the executive director.
¶ 14. HCDC maintains that Olivier was adhering to the advice of HCDC's counsel in imposing the fee and therefore should not be penalized. However, an attorney's advice contrary to the plain language of a statute does not necessarily exempt a client from sanctions. See Murphree v. Fed. Ins. Co., 707 So.2d 523, 532-33 (Miss.1997). Thus, we find that there was no error in the chancellor imposing a civil penalty.
¶ 15. HCDC also claims that the chancellor erred in awarding Kinney attorney's fees for the declaratory action and motion to reconsider. An award of attorneys' fees are generally subject to the abuse discretion standard of review. Mississippi Dep't of Wildlife Fisheries and Parks, 740 So.2d at 937(¶ 43). Fees are to be awarded only when a statute or other authority provides for them. Id. When there is no legislative authorization for attorney's fees, no fees should be imposed. Id.
¶ 16. Mississippi Code Annotated § 25-61-15 of the Public Records Act states that a person who willfully and knowingly denies access of public records to any person shall be liable for a civil penalty as well as all "reasonable expenses incurred" by such person bringing the lawsuit. Our supreme court has interpreted the "reasonable expenses incurred" to mean an award of attorneys' fees. Mississippi Dep't of Wildlife Fisheries and Parks, 740 So.2d at 937-939 (¶¶ 43-49). As the chancellor was certainly justified in his assessment of a civil *504 penalty, there was no error in his imposition attorneys' fees. Therefore, this claim is without merit.
¶ 17. Kinney has requested this Court to award additional attorney's fees incurred in defending this action on appeal. Based on the above, we find that an award of attorney's fees is appropriate for this appeal. Therefore, we direct that within fifteen (15) days after the date of this opinion, Kinney submit to this Court and counsel opposite an affidavit delineating his expended attorney's fees associated with his appeal to our Court. HCDC will have fifteen (15) days from the receipt of that affidavit to give a response after which the Court will enter an order awarding attorney's fees in the appropriate amount.

3. Whether the Court erred in denying HCDC's Request for Protective Order[6]
¶ 18. HCDC argues that a protective order is needed to maintain the confidentiality of its potential business partners contained in HCDC's receipts and reimbursement claims. Kinney filed a motion to compel responses to his discovery requests. One of Kinney's requests was for any and all documents in HCDC's possession reflecting payments, in the form of receipts or reimbursement claims, to Olivier. In his order granting Kinney's motion on this request, the chancellor allowed HCDC to file the documents requested under seal with the court for an in camera inspection. However, from this Court's inspection of the record, it does not appear that the receipts and/or reimbursement claims were those filed under seal. Instead, HCDC produced copies of Olivier's receipts for reimbursement to Kinney, but with certain information redacted on each receipt. In the chancellor's findings, HCDC was ordered to produce the unredacted copies of the receipts to Kinney.[7] The chancellor also found that HCDC failed to submit any documents or correspondence between the prospects, and that this failure to submit by HCDC evidenced a desire by HCDC to keep the requested information confidential, as required by the Act.[8] HCDC then asked the court in its motion for reconsideration to order the material requested to be produced pursuant to a protective order in order to maintain its confidentiality. The chancellor subsequently denied the request for a protective order.
¶ 19. HCDC argues that the business prospects named on its receipts are liken *505 to customer lists, which this Court has held to be exempt under the Act. See Caldwell and Gregory v. University of Southern Miss., 716 So.2d 1120, 1122-1123 (¶¶ 7-12)(Miss.Ct.App.1998). Based on the facts in this case, however, the information sought by Kinney is subject to disclosure.
¶ 20. When asked by the chancellor to have any confidential documents reviewed in camera under seal, HCDC failed to include these receipts in those documents. When this court conducted an in camera review of the redacted receipts, we found a redaction of public employees' names, as well as pre-printed bill redactions. The names of any prospects, ironically, were left unredacted. Since the information HCDC claims to be confidential appears to have been already given to Kinney, a request for a protective order is moot. Therefore, this claim is without merit. There being no error in any of the chancellor's decisions, we affirm.
¶ 21. THE JUDGMENT OF THE HARRISON COUNTY CHANCERY COURT IS AFFIRMED. HENRY KINNEY IS INSTRUCTED TO FILE WITH THE CLERK OF THIS COURT WITHIN FIFTEEN (15) DAYS OF THE DATE OF THIS OPINION AN AFFIDAVIT SETTING OUT ANY AND ALL ATTORNEY'S FEES INCURRED AS A RESULT OF THE APPEAL OF THIS CAUSE, AND TO SUBMIT A COPY OF SAID AFFIDAVIT TO COUNSEL OPPOSITE. THE HARRISON COUNTY DEVELOPMENT COMMISSION WILL THEN HAVE FIFTEEN (15) DAYS FROM ITS RECEIPT OF THE AFFIDAVIT OF KINNEY TO RESPOND. THE COURT OF APPEALS WILL THEN FORTHWITH MAKE A DECISION AS TO THE AMOUNT OF THE AWARD OF ATTORNEY'S FEES TO KINNEY. ALL COST OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS AND BARNES CONCUR. ISHEE AND ROBERTS, JJ., NOT PARTICIPATING.
NOTES
[1] FEB has not joined in this appeal.
[2] Kinney is a member of Citizens Association for Responsible Development (CARD), which opposed the sale of the HCDC's property to Yelvington for use of an aggregate distribution plant. See Citizens Ass'n for Responsible Development, Inc. v. Conrad Yelvington Distributors, Inc., 859 So.2d 361 (Miss.2003).
[3] Mississippi Public Records Act of 1983, §§ 25-61-1 to -17 (Rev.2003)
[4] The procedure requires requests to be made in writing, and further provided that copies could be made at the rate of $0.50 per page, payable at the time of reproduction. Maps or other large reproductions were to be charged a rate comparable to the fair market rate of such services; and access to documents would not be allowed if HCDC, its staff or attorneys determined that such requested documents were exempted from production by the Act.
[5] (1) Personnel records and applications for employment in the possession of a public body, as defined by paragraph (a) of Section 25-61-3, except for those which may be released to the person who made the application or with the prior written consent of the person who made the application, shall be exempt from the provisions of the Mississippi Public Records Act of 1983. Miss.Code Ann. § 25-1-100(1).
[6] Rule 26(d) of M.R.C.P., which governs protective orders, reads in part:

Protective Orders. Upon motion by a party or the person from whom discovery is sought, and for good cause shown, the court in which the action is pending, or in the case of a deposition the court that issued a subpoena therefor, may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following
. . . .
(7) that a trade secret or other confidential research, development, or commercial information not be disclosed or be disclosed only in a designated way.
[7] A May 3, 2004 affidavit states that HCDC did produce unredacted copies of the receipts and reimbursement claims. However, the receipt of those documents by Kinney, nor the unredacted documents themselves, were not a part of the record before this Court.
[8] Records furnished to public bodies by third parties which contain trade secrets or confidential commercial or financial information shall not be subject to inspection, examination, copying or reproduction under the Public Records Act until notice to said third parties has been given, but such records shall be released within a reasonable period of time unless the said third parties shall have obtained a court order protecting such records as confidential. Miss.Code Ann. § 25-61-9(1) (Rev.2003).