832 So.2d 594 (2002)
B. Pete BUFORD, Buford Land Partnership, LP, Dorothy Faye Kittrell and W.H. Kittrell, Appellants
v.
Hugh L. LOGUE, Jr. and Myra C. Logue, Appellees.
No. 2001-CA-00977-COA.
Court of Appeals of Mississippi.
November 26, 2002.
*597 Clifford C. Whitney, III, R.E. Parker, Jr., Vicksburg, for appellant.
Barrett Blake Teller, Vicksburg, for appellee.
Before SOUTHWICK, P.J., LEE and MYERS, JJ.
MYERS, J., for the Court:
¶ 1. B. Pete Buford and Buford Land Partnership, LP (Buford) and Dorothy Faye Kittrell and W.H. Kittrell (the Kittrells) appeal the decision of the Chancery Court of Warren County. The Honorable Pat Wise, sitting as special chancellor, granted fee simple title of two separate parcels and a private road to Hugh Logue, Jr. and Myra C. Logue (the Logues) by adverse possession. Buford and the Kittrells contend that the chancellor erred in granting title by adverse possession to the Logues. Buford and the Kittrells assert the following issues:
1. WHETHER THE CHANCELLOR ERRED IN FINDING THAT THE LOGUES PROVED ADVERSE POSSESSION OF THE .24 ACRE PARCEL BY CLEAR AND CONVINCING EVIDENCE;
2. WHETHER THE CHANCELLOR ERRED IN FINDING THAT THE LOGUES PROVED ADVERSE POSSESSION OF THE .73 ACRE PARCEL BY CLEAR AND CONVINCING EVIDENCE; AND
3. WHETHER THE CHANCELLOR ERRED IN FINDING THAT THE LOGUES WERE ENTITLED TO FEE SIMPLE TITLE BY ADVERSE POSSESSION OF THE PRIVATE ROAD RATHER THAN AN EASEMENT.

STATEMENT OF FACTS
¶ 2. The Logues instituted an action in the Chancery Court of Warren County seeking to claim title by adverse possession to several parcels of land. Trial was held based on a second amended complaint. The chancellor granted the Logues title by adverse possession to a .24 acre parcel, a .73 acre parcel, and a private road. The chancellor held a post trial hearing based on the defendants's motion to amend order, and for a new trial, and for other relief. The chancellor amended the order, granting the Kittrells an easement over the private road subject to the Kittrells making improvements to the road. After entry of a final judgment, Buford and the Kittrells appeal.

.24 Acre Parcel
¶ 3. The .24 acre parcel is located in Warren County on Freeman Road. The parcel is also referred to in the record and the briefs as "Lot 219" or "219 Freeman Road." This piece of disputed real property is more particularly described by the chancellor as follows:
Commencing at the northeast corner of Section 20, Township 16 North, Range 4 East, Warren County, Mississippi; thence West, 545.50 feet; thence South, 40.00 feet to the point of beginning of the herein described parcel; thence South 73 degrees 35 minutes for 113.54 feet; thence South 55 degrees 24 minutes 34 seconds West for 34.03 feet; thence South 65 degrees 02 minutes 12 seconds West for 137.66 feet; thence South 78 degrees 19 minutes West 67.70 *598 feet; thence North 49 degrees 22 minutes 51 seconds West for 8.92 feet to the east right of way of Freeman Road; thence with the east right of way of Freeman Road North 49 degrees 31 minutes 22 seconds East for 111.32 feet; thence with the east right of way of Freeman Road, North 35 degrees 35 minutes 03 seconds East for 55.51 feet to the point of beginning containing 0.24 acres, more or less.
¶ 4. Until his death on January 26, 1969, Archie Logue was the record owner of a greater parcel of land which included the.24 acre parcel. Upon Archie Logue's death, title was held by his heirs until their conveyances to Jerry Beard on April 15 and April 17, 1997. Jerry Beard immediately conveyed the land to B. Pete Buford on April 18, 1997. B. Pete Buford bought the land with notice of the presence of the Logues. B. Pete Buford is the record title holder of the .24 acre parcel. All taxes due on the .24 acre parcel have been paid by the record title owners.
¶ 5. In 1967, Hugh Logue, Jr. moved a mobile home onto the land. Testimony reflects that Hugh Logue, Jr. graded the land, put in a gravel driveway, installed a utility pole, a septic tank, and a water tap, and poured concrete slabs for later installation of a carport and storage shed. The Logues later fenced in the property. The Logues claimed that in 1967 Archie Logue gave the .24 acre parcel to Hugh Logue, Jr. as a wedding gift. Buford argued that Archie Logue simply gave the Logues permission to use the parcel of land. Both sides presented conflicting testimony as to whether an attempted gift was made or was there just mere permission. There was no deed or written instrument to evidence a gift. Testimony at the trial also indicated that Archie Logue refused to give a deed to Hugh Logue, Jr.
¶ 6. The land was occupied by the Logues from 1967 until 1976. The Logues moved the mobile home off the land in 1976 but continued to use the land for storage and for gardening. The carport and storage shed remained. Others, including the Kittrells, used the land for gardening and recreation. There was conflicting testimony as to whether the use of the property by other people was with or without the Logues's permission. The Logues presented testimony that they gave both expressed or implied consent. This type of use continued until 1984 when Howard Kittrell moved a mobile home onto the land. Testimony at trial conflicted as to whether Hugh Logue, Jr. granted Howard Kittrell permission to move onto the land or whether Hugh Logue, Jr. told Howard Kittrell that he was not the owner. Howard Kittrell remained on the land until 1990. Trey Logue, son of the Logues, bought the mobile home from Howard Kittrell. Trey Logue remained on the land until 1997.
¶ 7. In 1997, before Jerry Beard conveyed the land to B. Pete Buford, Hugh Logue, Jr. attempted to purchase the land from Jerry Beard. Both sides presented conflicting testimony as to whether this was an admission by the Logues that they did not own the property or an attempt by the Logues to try and settle any potential dispute without going to court. After Jerry Beard declined to sell the land to the Logues, he sold it to Buford. Trey Logue was demanded to leave the land by Glenn Kittrell. Glenn Kittrell was acting under order of Buford. Testimony was presented that Hugh Logue, Jr. knew he did not have record title as owner when Trey Logue left the land.
¶ 8. A videotape was offered by Buford at the post trial hearing, but not the trial. The tape is an attempt to show an admission by Hugh Logue, Jr. that the .24 acre *599 lot did not belong to the Logues. The chancellor excluded the videotape because the posttrial hearing was granted on matters concerning the private drive, not the.24 acre parcel.

.73 Acre Parcel
¶ 9. The .73 acre parcel is located in Warren County. The parcel is also known as "225 Freeman Road." This piece of disputed real property is more particularly described by the chancellor as follows:
Beginning on the west right of way line of Freeman Road, marking the Northeast corner of H.L. Logue lot as recorded in Deed Book 422, page 547, Warren County Courthouse, running thence North 44° 25' West 230 feet along the East side of said lot, thence North 69° 0' East, 190.5 feet to the West right of way of Freeman Road, thence following said right of way South 32° 7' East, 41.6 feet, thence South 24° 27' East, 48.8 feet, thence South 11° 5' East, 47.2 feet, thence South 2° 5' West, 29.2 feet, thence South 24° 40' West, 38.7 feet, thence South 50° 31' West, 65.9 feet to the point of beginning. Being all in Section 20, Township 16 North, Range 4 East, Warren County, Mississippi, containing 0.73 acres.
¶ 10. Russell Barnes owned a 4/6 interest, Ella Mae Barnes Logue owned a 1/6 interest, and Elmer Barnes owned a 1/6 interest in the land. In 1974, Russell Barnes deeded the entire .73 parcel of land to Hugh Logue, Jr., even though he did not own all the land. The Logues prepared the land by grading the land and installing a septic tank. The Logues built a tool shed on the land and used the land for storage. The Logues also staked out a portion of the land on which to build a house, although the house was never built. Elmer Barnes assisted Hugh Logue, Jr. in staking the land. The Kittrells later used the land for parking trucks. Both sides presented testimony as to whether the Kittrells sought permission from the Logues as owners. In 1997, Ella Mae Logue conveyed her interest in the land to Hugh Logue, Jr. Elmer Barnes died and his 1/6 interest passed to Margaret Barnes. Margaret Barnes conveyed her interest to B. Pete Buford, with his notice of the Logues acting as true owners. The Logues own a 5/6 interest in the land and Buford owns a 1/6 interest in the land. The Logues have paid the taxes on the land since the 1974 conveyance.

The Private Road
¶ 11. The private road is located in Warren County. This piece of disputed real property is more particularly described by the chancellor as follows:
Commencing at a found iron stake on the westerly line of Freeman Road, said iron stake marking the most northeast corner of H.L. Logue Sr., and Ella Mae Logue 2.37 acre tract as described in Deed Book 928 at Page 278 of Warren County, Mississippi Land Records; from iron stake run thence South 83° 33' 50" East, 793.54 feet to an iron stake marking the southwest corner of a .67 acre tract conveyed by Grantor herein to William Daniel Ettinger and Dana Logue Ettinger by Deed recorded in Deed book 1052 at Page 234 of Warren County, Mississippi County Land Records; run thence South 74° 15' 17" East 60.15 feet to the centerline and point of beginning of a 20 foot easement providing ingress and egress to Freeman Road, a public paved road; from said point of beginning run along the center line of said 20 foot easement the following bearing and distances to wit:
Thence North 87° 08' 23" West, 75.12 feet; thence North 80° 57' 27" West, 71.54 feet; thence North 70° 07' 53" *600 West, 95.51 feet; thence North 81° 25' 50" West, 56.94 feet; thence North 85° 04' 29" West, 49.37 feet; thence North 70° 25' 30" West 68.41 feet; thence North 67° 22' 49" West, 69.29 feet, thence North 73° 21' 18" West, 102.59 feet; thence North 75° 38' 41" West, 128.05 feet; thence South 76° 35' 40" West, 47 .35 feet, more or less, to the westerly right of way of Freeman Road, a public paved road and termination of said 20 foot easement. Said easement being situated in the Southwest Quarter of Section 4, the Southeast Quarter of Section 5, the North west Quarter of Section 10 and the Northeast Quarter of Section 20 Township 16 North, Range 4 East, Warren County, Mississippi.
¶ 12. The road had been owned by Addie Logue as part of a larger parcel. In 1965, Addie Logue conveyed a parcel of land to the Kittrells. The conveyed land surrounded and included the road. No reservation of easement was expressed in the deed. In 1976, Hugh Logue Jr., built a house on some different property that the only ingress to and egress from was the private road. Testimony was also presented that the Kittrells did not believe that the private road was part of their land. A contention was presented and apparently accepted by the chancellor that Addie Logue wanted to convey a plot of land north of the private road to the Kittrells which did not include the road. Addie Logue's successor in interest, Beatrice Patterson, quitclaimed her interest in the road to the Logues in 1997. The house built by the Kittrells encroaches on the land of an unidentified landowner. The house is on the Kittrells's land if the evidence that the Kittrells's thought their property was north of the private road is accepted.
¶ 13. The Logues also presented testimony that the Logues had been the people primarily using and maintaining the road. The Kittrells presented testimony that they are the record title holder of the road, that others used and maintained the road, and the most the Logues should be entitled to is an easement. The Kittrells are the record title owners of the land.

LEGAL ANALYSIS
¶ 14. The Court follows a limited standard of review when addressing appeals from a chancery court. Reddell v. Reddell, 696 So.2d 287, 288 (Miss.1997). We shall not disturb the findings of a chancellor unless the chancellor was manifestly wrong, clearly erroneous, or there was an application by the chancellor of an erroneous legal standard. Wright v. Roberts, 797 So.2d 992, 997(¶ 14) (Miss.2001); Mercier v. Mercier, 717 So.2d 304, 306(¶ 8) (Miss.1998); Goode v. Village of Woodgreen Homeowners Ass'n, 662 So.2d 1064, 1070-71 (Miss.1995); Herring Gas Co., Inc. v. Whiddon, 616 So.2d 892, 894 (Miss. 1993); Perkins v. Thompson, 609 So.2d 390, 393 (Miss.1992); Bradford v. Williams, 797 So.2d 352, 354(¶ 5) (Miss.Ct. App.2001); Lee Hawkins Realty, Inc. v. Moss, 724 So.2d 1116, 1118(¶ 8) (Miss.Ct. App.1998). Great deference is given to the chancellor as both finder of fact and trier of law. If there are no specific findings of fact, the appellate court will assume that the trial court has made determinations of fact sufficient to support its judgment. Pace v. Owens, 511 So.2d 489, 492 (Miss. 1987). The appellate court will also look to the evidence and determine whether or not the statement of facts justify the decree. Greenlee v. Mitchell, 607 So.2d 97, 105 (Miss.1992); Pace, 511 So.2d at 492.
¶ 15. To succeed on a claim of adverse possession, the claimant has the burden to prove each element by clear and convincing evidence. Rice v. Pritchard, 611 So.2d 869, 871 (Miss.1992); West v. *601 Brewer, 579 So.2d 1261, 1262 (Miss.1991); Stallings v. Bailey, 558 So.2d 858, 860 (Miss.1990). Adverse possession requires the claimant to prove that her possession or occupancy was: (1) under claim of ownership; (2) actual and hostile; (3) open, notorious, and visible; (4) continuous and uninterrupted for a period of ten years; (5) exclusive; and (6) peaceful. Rice, 611 So.2d at 871; Stallings, 558 So.2d at 860; Pieper v. Pontiff, 513 So.2d 591, 594 (Miss. 1987); Johnson v. Black, 469 So.2d 88, 90 (Miss.1985); Bradford, 797 So.2d at 354(¶ 6); Hearn v. Shelton, 762 So.2d 792, 794-95(¶ 6) (Miss.Ct.App .2000); Simmons v. Cleveland, 749 So.2d 192, 196(¶ 13) (Miss.Ct.App.1999). These elements are based upon interpretation of Mississippi's statutory adverse possession law. Miss Code Ann. § 15-1-13 (Rev.1995).
¶ 16. The Mississippi legislature enacted the adverse possession statute so as to resolve the problem of inattentive landowners who ignore their property over a long period of time. Clanton v. Hathorn, 600 So.2d 963, 966 (Miss.1992). Adverse possession is defined in Miss.Code Ann. § 15-1-13 (Rev.1995) as follows:
Ten (10) years' actual adverse possession by any person claiming to be the owner for that time of any land, uninterruptedly continued for ten (10) years by occupancy, descent, conveyance, or otherwise, in whatever way such occupancy may have commenced or continued, shall vest in every actual occupant or possessor of such land a full and complete title, saving to persons under the disability of minority or unsoundness of mind the right to sue within ten (10) years after the removal of such disability, as provided in Section 15-1-7.
¶ 17. The Mississippi Supreme Court, in a description of the role of the adverse possessor, has agreed that:
[A]n adverse possessor "must unfurl his flag on the land, and keep it flying, so that the (actual) owner may see, and if he will, that an enemy has invaded his domains, and planted the standard of conquest". Walter G. Robillard and Lane J. Bouman, A Treatise on the Law of Surveying and Boundaries, § 22.08 (5th ed.1987).
Blankinship v. Payton, 605 So.2d 817, 820 (Miss.1992).
1. WHETHER THE CHANCELLOR ERRED IN FINDING THAT THE LOGUES PROVED ADVERSE POSSESSION OF THE .24 ACRE PARCEL BY CLEAR AND CONVINCING EVIDENCE
A. Under claim of ownership
¶ 18. It is undisputed that the Logues are not nor have ever been the record title holders to the .24 acre parcel. The Logues claimed their ownership based on the land being given as a gift from Archie Logue and evidenced by the improvements made on the land. A parol gift and holding of the land as owner is sufficient if actual color of title is not available. Davis v. Davis, 68 Miss. 478, 479, 10 So. 70, 71 (1891). Buford asserts that permission was all that was given to the Logues by Archie Logue. Both parties presented trial testimony as to whether a gift or permission was given by Archie Logue. The chancellor found enough credible evidence to support the Logues contention that they believed they owned the property, or at least in the alternative, acted as the true owners of the land.
¶ 19. Even if only permission was given, Archie Logue's death in 1969 effectively ended any permission that may have been given to the Logues. Buford presented no evidence that there was permission from Archie Logue's heirs to allow the Logues to remain on the land. The chancellor *602 found that from 1969 through at least 1979 the Logues continued to use the property. The Logues occupied the land without permission for seven years or under the belief they owned the land for nine years, plus an additional eight years of using the land for gardening and other uses. Whether or not the first two years were with permission of Archie Logue does not matter since additional time was required in either case. The chancellor made her decision based on a time period from 1969 through 1979, indicating that the chancellor chose not to include the first two years in the adverse possession time period.
¶ 20. Buford also presented testimony that Hugh Logue, Jr. admitted to not owning the land. The Logues countered by offering explanations of the statements. The chancellor accepted the Logues explanations over the contentions of Buford that the admissions defeated the Logues's claim.
¶ 21. Additionally, Buford tried to introduce a videotape made in 1991 that purportedly shows Hugh Logue, Jr. admitting that he does not own the land. The tape was not offered at the trial but at a posttrial hearing. The chancellor properly denied the introduction of the tape at the posttrial hearing which was limited to matters concerning the private drive. It appears that the tape existed and was in the possession of Buford at the time of the trial. For some reason Buford chose to try and introduce the tape at the limited posttrial hearing instead of the trial. As with most areas of the law, a chancellor is granted wide discretion as to whether a litigant can reopen a case for additional testimony. Kelly v. Shoemake, 460 So.2d 811, 815 (Miss.1984). This Court can not say that the chancellor abused her discretion.
¶ 22. The last argument made by Buford is that the Logues did not pay any taxes nor claim the .24 acre parcel as a homestead. While it is true that paying the taxes on a parcel of land is evidence of whether or not a claim of ownership exists, it is not conclusive. Geoghegan v. Krauss, 228 Miss. 231, 240, 87 So.2d 461, 465 (1956). Payment of taxes alone will not ripen a defective possession into title. Leavenworth v. Reeves, 106 Miss. 722, 64 So. 660, 661-62 (1914). The payment of taxes is one factor as to possession and whether an adverse possessor has paid property taxes on the land in controversy is not conclusive of the claim of ownership. Houston v. U.S. Gypsum Co., 652 F.2d 467, 474 (5th Cir.1981).
B. Actual possession
¶ 23. Buford argued that for a person to take title by adverse possession, the actual possession must be actual occupancy. The Logues ended their occupancy of the land in 1976. The Logues continued to use the land primarily as a garden for eight more years and also used the land for storage. A vegetable garden can be a type of land use to give notice to the actual owners of land that someone else is possessing their land. Stewart v. Graber, 754 So.2d 1281, 1284-85, (¶ 17) (Miss.Ct.App. 1999). The Logues also maintained a fence on the property. A party claiming land by adverse possession who encloses the piece of property with a fence is a factor to be considered in determining if adverse possession occurred. Pieper, 513 So.2d at, 594-95; Cole v. Burleson, 375 So.2d 1046, 1048 (Miss.1979); Cook v. Mason, 160 Miss. 811, 134 So. 139 (1931) (fenced pasture land more convincing than unfenced pasture land); see also Snowden & McSweeny Co. v. Hanley, 195 Miss. 682, 686, 16 So.2d 24, 25 (1943) ("[T]he question in [adverse possession cases] is whether the inclosure, like other acts of possession, *603 is sufficient to fly the flag over the land and put the true owner upon notice that his land is held under an adverse claim of ownership."). The chancellor found that after the occupancy ended, the Logues maintained such control over the land as to amount to actual possession. A claimant giving permission to allow another to use the land is a factor weighing in favor of adverse possession.
C. Open, notorious, and visible
¶ 24. The Logues continued their possession of the property after their occupancy ended. The chancellor found that their occupancy followed by their use of the land for gardening and storage was sufficient to give notice to the true owners that the land was at risk for adverse possession. The land is located on a public road. The use by the Logues was easily seen by the true owners.
D. Continuous and uninterrupted for ten years
¶ 25. Mississippi statutorily requires a ten-year uninterrupted and continuous period for adverse possession. Miss.Code Ann. § 15-1-13 (Rev.1995). The Logues argued that their eight year use of the land for gardening and storage plus the time that they occupied the land was more than sufficient to satisfy the chancellor's finding. It is true that mere sporadic, noncontinuous use is insufficient. Eastlawn Development Co. v. Wells, 311 So.2d 334, 337 (Miss.1975). The use by the Logues was more than sporadic or intermittent.
E. Exclusive
¶ 26. Buford argued that during the time the land was used for gardening, the Logues did not use it exclusively. The Logues presented testimony that others were allowed to use the land by permission of the Logues. Buford presented testimony that from the time period from 1976 through 1984, many people used the parcel without permission of the Logues. The chancellor found the evidence presented by the Logues more credible. A claimant must exclude from the land all those except those she gives permission. Blankinship, 605 So.2d at 820. The chancellor ruled that the ten-year period had been satisfied by the Logues from 1969 through at least 1979.
F. Peaceful
¶ 27. At no point during the trial was evidence presented that an objection to the Logues presence on the property was made during the adverse possession period of 1969 through 1979. The chancellor rightfully found the possession to be peaceful.
Conclusion
¶ 28. Although conflicting evidence was presented, the chancellor made her decision based upon the facts presented at the trial. Upon a review of the record, we hold that there was sufficient credible evidence to support the chancellor's ruling. The chancellor was able to determine that the elements of adverse possession had been met by clear and convincing evidence. As to the .24 acre tract, Chancellor Wise was not manifestly wrong, clearly erroneous, or applied an erroneous legal standard.
2. WHETHER THE CHANCELLOR ERRED IN FINDING THAT THE LOGUES PROVED ADVERSE POSSESSION OF THE .73 ACRE PARCEL BY CLEAR AND CONVINCING EVIDENCE
A. Under claim of ownership
¶ 29. The chancellor accepted the contention presented by the Logues that *604 they received a deed purporting to convey the entire parcel to them. The deed purports to convey the entire parcel. Buford presented testimony that the grantor was notorious for signing deeds for land that he did not own and that the Logues knew about the notoriety thus defeating any claim by the Logues of ownership. The chancellor chose to accept the evidence presented by the Logues over that presented by Buford. The Logues were "strangers to the title," within the meaning of the case of Quates v. Griffin, which held:
Where one or more of several cotenants convey land by an instrument purporting to vest in the grantee the fee simple title to the entire property, and the grantee is not a cotenant at the time of the execution of the deed, and the grantee records his deed in the county where the land lies, and enters into possession asserting open and exclusive ownership thereof, the cotenants not participating in the conveyance are deemed to be ousted and on the termination of the statutory period, title by adverse possession becomes vested in the grantee. In order for such deed to constitute an ouster as aforesaid, the grantee must have had no interest whatever in the land prior to the execution of the deed, either as a cotenant by deed or as a cotenant by inheritance....
Quates v. Griffin, 239 So.2d 803, 811 (Miss. 1970) (emphasis supplied).
B. Actual possession
¶ 30. Buford also argued that the land was only prepped for occupancy and not actually occupied. As stated earlier, a claimant seeking title by adverse possession may possess the land by occupancy or use or a combination of both. The chancellor properly concluded that the Logues exercised sufficient control over the land to equal actual possession.
C. Open, notorious, and visible
¶ 31. Buford argued that because Elmer Barnes helped Hugh Logue, Jr. prepare the land, the possession must have been permissive and not open, notorious, and visible. The Logues argued and the chancellor held that the fact Elmer Barnes helped Hugh Logue, Jr. prepare the land, Elmer Barnes was put on notice of potential adverse possession by the Logues.
¶ 32. Buford correctly argued that for one cotenant to obtain title owned by the other cotenant, an ouster must have occurred. Many cases from the supreme court have held that under certain circumstances, a grantor may reclaim a part of his conveyed property by adverse possession against his grantee. Skelton v. Lewis, 453 So.2d 703, 706 (Miss.1984). The proof required to establish adverse possession in such a situation is far greater than the average adverse possession case. Skelton, 453 So.2d at 706. Our supreme court stated further:
[I]n any case where the grantor claims by adverse possession all or part of the property conveyed, the proof of actual notice of that possession by the grantor to the grantee should be stronger than in the normal adverse possession case and should be clear beyond a reasonable doubt. The evidence should reveal that the grantee has been ousted from the property he received under the conveyance.
Id. at 707.
¶ 33. The chancellor found that Elmer Barnes assisted Hugh Logue, Jr. in preparing the land to build a house. It is obvious that Elmer Barnes knew that the Logues were acting as the true owners.
¶ 34. An ouster in Mississippi requires (1) an execution of a deed purporting *605 to convey fee simple title to the claimant, (2) recording of the deed, and (3) entry of the grantee claiming the entire interest. Quates, 239 So.2d at 812. The chancellor evaluated these elements and held that there was a deed purporting to convey the entire parcel to the Logues, a stipulation that the deed was recorded, and that the Logues acted as true owners. At no point during the trial was evidence presented that an objection to the presence of the Logues or any of their predecessors on the property was made during the adverse possession period.
D. Continuous and uninterrupted for ten years
¶ 35. The chancellor found that the Logues had possessed the land for more than ten years. Buford's only argument was that it had not been ten years against Buford. The chancellor found that Buford had notice of the presence of the Logues.
E. Exclusive
¶ 36. Buford presented testimony that the Kittrells and their son had used the property to park trucks. The Logues presented evidence that the dates claimed by Buford were inaccurate. The chancellor carefully weighed the evidence and ruled that the Logues had exclusivity over the land for a ten year period.
F. Peaceful
¶ 37. At no point during the trial was evidence presented that an objection to the presence of the Logues was made during the adverse possession period.
Conclusion
¶ 38. Although conflicting evidence was presented, the chancellor made her decision based upon the facts presented at the trial. Upon a review of the record, we hold that there was sufficient credible evidence to support the chancellor's ruling. An ouster occurred and the land was adversely possessed. The chancellor was able to determine that the elements of adverse possession had been met by clear and convincing evidence. As to the .73 acre tract Chancellor Wise was not manifestly wrong, clearly erroneous, or applied an erroneous legal standard.
3. WHETHER THE CHANCELLOR ERRED IN FINDING THAT THE LOGUES WERE ENTITLED TO FEE SIMPLE TITLE BY ADVERSE POSSESSION OF THE PRIVATE ROAD RATHER THAN AN EASEMENT.
¶ 39. The standard and burden of proof to establish a prescriptive easement is the same as a claim of adverse possession of land. Thornhill v. Caroline Hunt Trust Estate, 594 So.2d 1150, 1153 (Miss. 1992). After examining the findings of the chancellor, the Court holds that the chancellor applied the wrong legal standard by finding that adverse possession had occurred. The chancellor should have only granted a prescriptive easement in the private road to the Logues.
A. Under claim of ownership
¶ 40. The Kittrells make an interesting point about the successor in interest of a grantor that is trying to claim title by adverse possession. The Logues are successors in interest of Addie Logue and Beatrice Patterson. Testimony was presented and accepted by the chancellor that Addie Logue only wanted to convey the portion of land north of the private road and that the Kittrells thought that their land was north of the road. The chancellor found that the Logues had as successors a claim of ownership.
B. Actual possession
¶ 41. The Logues presented testimony that they and their predecessors *606 were the ones who used and maintained the private drive. The chancellor accepted this testimony. As stated earlier, actual possession can be use of the land, not just occupancy.
C. Open, notorious, and visible
¶ 42. Testimony was presented by the Logues that they and their predecessors were the primary ones to use and maintain the road. The Kittrells presented testimony that Beatrice Patterson's husband asked the Kittrells for permission to pave the road. The Logues presented testimony, and the Kittrells do not deny, that Hugh Logue, Jr. and Mr. Patterson financed the project. The chancellor accepted the Logues's version over the Kittrells's.
D. Continuous and uninterrupted for ten years
¶ 43. Although the Logues were granted the quitclaim deed in 1997, the period of adverse possession began running earlier for their predecessors in interest. The Kittrells argued that since the Logues did not receive the quitclaim deed until 1997, the time period did not start to run until 1997. The adverse possession of successive occupants in privity with each other may be combined to reach the statutory period, a concept generally known as "tacking." Rutland v. Stewart, 630 So.2d 996, 999 (Miss.1994). The chancellor obviously found that the time periods of the predecessors were tacked onto the time period of the Logues. Mississippi law allows tacking of one adverse possession to another as long as there is privity of possession existing between the predecessor and the claimant. Walters v. Rogers, 222 Miss. 182, 75 So.2d 461, 462 (1954). Privity may be established or created by conveyance, agreement, or understanding which in fact transfers possession. Walters, 222 Miss, at 182, 75 So.2d at 462.
E. Exclusive
¶ 44. The Kittrells claimed that they used the private road to turn their trucks around. The chancellor found that this use by the Kittrells did not occur until after ownership by adverse possession had matured in favor of the predecessors of the Logues. The chancellor held a post trial hearing and granted the Kittrells an easement to continue to turn trucks around on the private road subject to the Kittrells making improvements to the road to prevent damages from the use of the road by the Kittrells.
F. Peaceful
¶ 45. At no point during the trial was evidence presented that an objection to the presence of the Logues or any of their predecessors on the property was made during the adverse possession period.
Conclusion
¶ 46. Because the road was surrounded and encompassed by the land owned by the Kittrells, all that the Logues were entitled to was a prescriptive easement. Because the elements are the same and require the same standard of proof, we reverse and render the decision of the chancellor as to the private road. Ownership is vested in the Kittrells and a prescriptive easement vested in the Logues.

CONCLUSION
¶ 47. This Court does not address the theory that notice of an adverse possessor negates title taken by a person. The chancellor used this theory, based on Bank of Mississippi v. Hollingsworth, 609 So.2d 422 (Miss.1992), solely as an alternative to award the Logues title by adverse possession to the .24 acre and the .73 acre parcel of land. This Court agrees with the chancellor *607 that there was adverse possession to these parcels.
¶ 48. THE JUDGMENT OF THE CHANCERY COURT OF WARREN COUNTY IS AFFIRMED AS TO THE.24 AND .73 ACRE PARCELS. THE JUDGMENT IS REVERSED AND RENDERED AS TO THE PRIVATE ROAD WITH TITLE BEING GRANTED IN THE KITTRELLS AND A PRESCRIPTIVE EASEMENT BEING GRANTED IN THE LOGUES. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, AND CHANDLER, JJ., CONCUR.
IRVING AND BRANTLEY, JJ., NOT PARTICIPATING.