# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-CA-01308-COA

**EMILY F. COOLEY**                                                                                       **APPELLANT**

**v.**

**LAWRENCE J. TUCKER JR.**                                                                          **APPELLEE**

DATE OF JUDGMENT:                  07/29/2015
TRIAL JUDGE:                              HON. MILLS E. BARBEE
COURT FROM WHICH APPEALED:   LAFAYETTE COUNTY CHANCERY
                                                  COURT
ATTORNEYS FOR APPELLANT:        MICHAEL N. WATTS
                                                  GEOFFREY FELIX CALDERARO
ATTORNEY FOR APPELLEE:           JOHN BRIAN HYNEMAN
NATURE OF THE CASE:                 CIVIL - OTHER
TRIAL COURT DISPOSITION:          ORDERED APPELLANT TO RETURN
                                                  ENGAGEMENT RING TO APPELLEE
DISPOSITION:                             AFFIRMED - 09/06/2016
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

     **EN BANC.**

     **ISHEE, J., FOR THE COURT:**

¶1.     In December 2011, Lawrence J. Tucker Jr. proposed marriage to Emily F. Cooley, and

presented her with a diamond engagement ring.  In November 2014, Tucker broke off the

engagement.  Thereafter, Cooley maintained possession of the ring despite Tucker's requests

to have the ring returned.  Tucker filed a replevin action in the Lafayette County Chancery

Court in February 2015 seeking return of the ring.  After a trial on the merits, the chancery

court ruled in favor of Tucker.  In August 2015, the chancery court ordered Cooley to return

the ring.  Aggrieved, Cooley appeals.  Finding no error, we affirm.

**STATEMENT OF FACTS**

¶2.     Tucker and Cooley began dating in April 2009.  In the summer of 2010, Cooley relocated from Hattiesburg, Mississippi, to Oxford, Mississippi, and began cohabiting with Tucker in Tucker's home.  Tucker averred that the relationship was tumultuous.  Tucker testified that after consistent requests from Cooley to become engaged, he believed an engagement would improve the relationship.  Accordingly, Tucker proposed marriage to Cooley in December 2011.

¶3.     Tucker presented Cooley with a ring upon asking her to marry him.  The ring appraised at approximately $40,000.  Cooley accepted the proposal, and wore the ring continuously thereafter.  Tucker immediately acquired insurance on the ring.  He listed himself as the sole insured on the policy.  Cooley was not referenced anywhere in the policy.

¶4.     Tucker and Cooley could not agree, among other things, on the type of wedding they desired.  A wedding date was never chosen, nor were any wedding plans pursued.  Tucker testified that the relationship remained troubled and without improvement following the engagement.  Tucker also stated that he attempted to end the relationship numerous times in person, but that Cooley's adverse reactions and threats to harm herself dissuaded him from pushing the issue.  Tucker ultimately ended the relationship through an email in November 2014.

¶5.     Cooley moved out of Tucker's house within a few days of receiving the email.  Thereafter, Tucker requested that Cooley return the engagement ring.  Cooley refused.  After numerous failed attempts to recoup the ring from Cooley, Tucker ultimately filed a replevin

2

action in the chancery court seeking return of the ring.

¶6. A trial took place before the chancellor on May 21, 2015. Tucker and Cooley both testified. Cooley asserted that the ring was an inter vivos gift to her from Tucker. Tucker countered that the ring was a conditional gift, premised on the condition that he and Cooley would marry. On July 29, 2015, the chancellor entered an order awarding Tucker possession of the ring. The chancellor determined that the ring was a conditional gift, and since Tucker and Cooley did not fulfill the condition of marriage, Cooley was not entitled to keep it. Cooley now appeals the chancery court's judgment.

## DISCUSSION

¶7. Our standard of review for analyzing chancery-court judgments is limited. *Buford v. Logue*, 832 So. 2d 594, 600 (¶14) (Miss. Ct. App. 2002) (citing *Reddell v. Reddell*, 696 So. 2d 287, 288 (¶1) (Miss. 1997)). "We will not disturb the findings of a chancellor unless the chancellor was manifestly wrong, clearly erroneous, or applied an erroneous legal standard. Great deference is given to the chancellor as both finder of fact and trier of law." *Id.*

¶8. Cooley asserts that the chancery court erred in its determination that the ring was a conditional gift rather than an inter vivos gift. The chancery court properly cited *Johnson v. Collins*, 419 So. 2d 1029, 1030 (Miss. 1982), as guidance on the elements of a valid inter vivos gift, which are as follows: "(1) a donor competent to make a gift[;] (2) a voluntary act of the donor with donative intent[;] (3) the gift must be complete with nothing else to be done[;] (4) there must be delivery to the donee[; and] (5) the gift must be irrevocable." *Id.* (citation omitted).

3

¶9. In *Johnson*, the properties at issue consisted of certificates of deposit that were given on the condition that the recipient obtain a divorce. *Id*. at 1031. The supreme court determined that because the divorce did not occur, the gift was not a valid inter vivos gift "because the gift was not complete with nothing left to be done." *Id*.

¶10. Likewise, the cases relied upon by Cooley, *Lomax v. Lomax*, 172 So. 3d 1258 (Miss. Ct. App. 2015), and *Neville v. Neville*, 734 So. 2d 352 (Miss. Ct. App. 1999), are also divorce cases that question which party should be awarded the engagement ring post-divorce. In both cases, we determined that the wife should keep the engagement ring because "it was not a marital asset subject to equitable division." *Lomax*, 172 So. 3d at 1262 (¶13) (quoting *Neville*, 734 So. 2d at 357 (¶19)).

¶11. This is not inconsistent with the required elements in *Johnson*. The engagement ring is to be considered an inter vivos gift conditioned upon the parties getting married – a condition that, obviously, occurred in the cases cited by Cooley. *Id*. at (¶11). Hence, in those cases, the *Johnson* requirements were met, including the element mandating that the gift be completed with nothing more to be done. *Johnson*, 419 So. 2d at 1030.

¶12. Here, the chancellor ultimately determined that "[t]he engagement ring was a conditional gift presented in contemplation of a marriage that did not occur." It is from this determination that the chancellor awarded Tucker the ring. This conclusion is supported by Mississippi caselaw and by fact. We cannot find that the chancellor "was manifestly wrong, clearly erroneous, or applied an erroneous legal standard." *Buford*, 832 So. 2d at 600 (¶14). This issue is without merit.

4

¶13. Cooley requests, in an alternative argument, that this Court create new precedents under which trial courts would determine ownership of an engagement ring following a broken engagement. We decline to do so. Existing Mississippi gift law adequately addresses cases such as this, and we will not deviate from the path set before us at this time.

¶14. **THE JUDGMENT OF THE LAFAYETTE COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**LEE, C.J., IRVING, P.J., FAIR AND WILSON, JJ., CONCUR. BARNES, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY GRIFFIS, P.J., AND JAMES, J.; CARLTON, J., JOINS IN PART WITH OPINION. CARLTON, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED IN PART BY BARNES AND JAMES, JJ. GREENLEE, J., NOT PARTICIPATING.**

**BARNES, J., DISSENTING:**

¶15. To the extent that the engagement ring was a conditional gift given in contemplation of marriage, as determined by the chancellor, I disagree that Tucker is entitled to the return of the ring under these circumstances. A review of basic contract principles is sufficient to establish that Tucker, who prevented the completion of the condition by breaking off the engagement, excused that condition and is not entitled to benefit from his action.[1] Therefore,

---

[1] Mississippi appellate courts have not addressed this precise factual situation until now. Furthermore, as the parties observe, there is a split of authority in other jurisdictions on how to resolve these cases. I find it unnecessary, however, to delve into the holdings of the various other jurisdictions, except to note that the traditional, common-law approach is to determine who was at fault for breaking off the engagement, but the modern trend in some jurisdictions is to apply a non-fault-based approach. *See* 23 *Williston on Contracts* § 62:28 (4th ed. 2002). This modern approach was employed by the chancellor here – concluding that the ring is a conditional gift, and the donor is entitled to ownership of the gift once the condition (marriage) is not satisfied, with no consideration of who was at fault in ending the relationship. In my view, the case can, and should, be determined under basic contract principles.

I respectfully dissent from the majority's opinion and would reverse and render the court's judgment on this particular issue.

¶16.    The Mississippi Supreme Court has explained: "Where a contract is performable on the occurrence of a future event, there is an implied agreement that neither party will place any obstacle in the way of the happening of such event, and where a party is himself the cause of the failure he cannot rely on such condition to defeat his liability." *Garner v. Hickman*, 733 So. 2d 191, 195 (¶16) (Miss. 1999) (citing *Warwick v. Matheney,* 603 So. 2d 330, 337 (Miss. 1992) (overruled on other grounds)). More recently, this Court reiterated: "There exists a 'principle of fundamental justice that if a promisor is himself the cause of the failure of performance, either of an obligation due him or of a condition upon which his own liability depends, he cannot take advantage of the failure." *Fairchild v. Bilbo*, 166 So. 3d 601, 607 (Miss. Ct. App. 2015) (citing *Morris v. Macione,* 546 So. 2d 969, 971 (Miss. 1989)). Under this "doctrine of prevention," "when a party to a contract causes the failure of the performance of an obligation due, [he] cannot in any way take advantage of that failure." 13 *Williston on Contracts* § 39.3 (4th ed. 2013). Moreover, the doctrine of prevention "provides that when a promisor wrongfully prevents a condition from occurring that condition is excused." *Mendoza v. COMSAT Corp.*, 201 F.3d 626, 631 (5th Cir. 2000); *see also Williston on Contracts* § 39.4 ("If a promisor prevents or hinders the occurrence or fulfillment of a condition to the duty of performance, the condition is excused.").

¶17.    Here, Tucker's unilateral decision to terminate the engagement to Cooley prevented the condition from being fulfilled, thereby excusing the condition. As argued by Cooley's

counsel at the hearing:

> [I]f the agreement is not performed because of a breach by the donor, which in this case is [Tucker], the donor should not benefit from that breach by regaining the ring.

> If they're taking the position that the marriage was a condition precedent but yet they break the condition precedent, how can the law condone that[?] There's nothing Ms. Cooley can do. Will you marry me, yes. He gives her the ring. They live together three years, as we would say as husband and wife. And then he breaks off the engagement. He cuts off the condition precedent that he's now trying to rely on to get the ring back. How is that equitable? It's not.

¶18. I further find *Johnson v. Collins*, 419 So. 2d 1029 (Miss. 1982), the case cited by both the chancellor and the majority to support their findings, distinguishable from the present case. In *Johnson*, a party's death prevented the completion of the condition (divorce). *Id*. at 1031. "The rule that nonperformance by one party to a contract is excused if the other party hinders or prevents the performance or makes it impossible applies *only* if the failure to perform was not caused by the preventing party's own inability to perform." 13 *Williston on Contracts* at § 39.8 (emphasis added); *see also Creek Ranch Inc. v. New Jersey Tpk. Auth.*, 383 A.2d 110, 116 (N.J. 1978) ("If the promisee could not or would not have performed the condition, or it would not have happened whatever had been the promisor's conduct, the condition is not excused." (citing 5 *Williston on Contracts* § 677, at 231-32 (3d ed. 1957))). As Johnson was deceased, he was unable to perform under the contract.

¶19. The chancery court observed that "neither party was at fault for [the relationship's] demise." And while I sympathize with the chancery court's public-policy reasoning – that Tucker should not be "penalized" for realizing that marriage to Cooley would be imprudent

– and with Tucker's testimony that he felt that Cooley pressured him into proposing, a $40,000 promise to enter into marriage should have been regarded by Tucker with gravity and with due consideration given to the potential outcome, especially in light of his testimony that the relationship was "rocky." Since Tucker broke off the engagement, making it impossible for the condition (marriage) to be fulfilled, I would reverse and render the chancery court's judgment on this issue, awarding the engagement ring to Cooley.

**GRIFFIS, P.J., AND JAMES, J., JOIN THIS OPINION; CARLTON, J., JOINS IN PART WITH OPINION.**

**CARLTON, J., DISSENTING:**

¶20.    I respectfully dissent from the majority opinion.[2]  I would reverse and remand.

¶21.    In this replevin action, the chancellor erroneously held that the ring constituted a conditional gift, and that since Tucker and Cooley failed to fulfill the condition of marriage, Cooley was not entitled to keep the ring.  Mississippi precedent reflects that in actions for wrongful breach of the promise to marry, our courts apply contract principles, not the law of conditional gifts. *See Carney v. McGilvray*, 152 Miss. 87, 87, 119 So. 157, 160 (1928). Under Mississippi precedent, the ring is given as consideration for the promise to marry, and a contract is formed upon agreement of the other party to marry. *Id*.  Our supreme court has further held that "where a woman in good faith enters into a marriage contract with a man, and he fails to fulfill his promise, she may maintain an action for damages against him for breach of promise," and is "entitled to recover for mental anguish, mortification, humiliation, and loss of health resulting from such breach, in addition to actual pecuniary loss sustained

_____

[2] *See Carney v. McGilvray*, 152 Miss. 87, 87, 119 So. 157, 160 (1928).

8

thereby." *Ashley v. Dalton*, 119 Miss. 672, 81 So. 488, 488 (1919).[3]

¶22.    Many states have legislatively enacted statutes limiting or abolishing the action of breach of contract to marry and have legislatively abolished the right to recover noneconomic damages in such actions. *See* Rebecca Tushnet, *Rules of Engagement*, 107 Yale L.J. 2583, 2593 (1998). In so doing, many states have adopted a no-fault approach to recovery of gifts, such as engagement rings, as conditional gifts. *Id.* However, Mississippi has not adopted a no-fault conditional-gift approach. As stated, in an action for breach of the promise to marry in Mississippi, the applicable jurisprudence holds that the ring is given as consideration for the promise to marry, and then a marriage contract is formed upon agreement of the other party to marry. *See Carney*, 152 Miss. at 87, 119 So. at 160; *Wion v. Henderson*, 494 N.E.2d 133, 134 (Ohio Ct. App. 1985) (finding that "absent an agreement to the contrary[,] an engagement ring need not be returned when the engagement is unjustifiably broken by the donor"). Thus Tucker must show, under Mississippi precedent applying contract-law principles, that he is entitled to possession of the ring in this replevin action.[4]    *See* Miss. Code Ann. § 11-37-101 to -157 (Rev. 2012) (Mississippi replevin

---

[3] The damages consider the loss of the opportunity to marry and damage to reputation. *See generally* Rebecca Tushnet, *Rules of Engagement*, 107 Yale L.J. 2583, 2593 (1998) (discussing various treatments by different states of return of gifts given in contemplation of marriage and of actions for damages for breach of promise to marry); *see also Belm v. Patrick*, 293 P. 847, 850 (Cal. Ct. App. 1930) (addressing mitigation of damages for discovery of unbecoming conduct of betrothed as cause of breach of the promise to marry); *Carney*, 152 Miss. at 87, 119 So. at 158 (In determining breach of promise to marry, the court acknowledged that one party's conduct could rise to the level of being "sufficiently immodest and wrongful to relieve defendant from carrying out contract.").

[4] In her law-journal article *Rules of Engagement*, Rebecca Tushnet explained:

9

statutes).

¶23. Additionally, the chancellor must apply the appropriate legal standards and Mississippi precedent in determining if Tucker met his burden of proof to show that he is entitled to possession and return of the engagement ring under Mississippi precedent of contract-law principles applicable to wrongful breach of the promise to marry.[5] "The burden

> In early American law, women could recover damages when men promised marriage and then reneged; the action was known simply as "breach of promise." Early breach-of-promise cases were mainly about responding to the financial harms of a broken engagement, but the action was reconceptualized over time as one centering around emotional wounds. By the beginning of the twentieth century, recoverable damages included the loss of the benefits a woman would have received from marriage, her loss of a chance to marry someone else, and the emotional harm she suffered from the broken engagement, giving rise to the popular name for the resultant lawsuits—heartbalm suits.

*See* Tushnet, at 2586. Tushnet's article also provides:

> Breach of promise was not just about love, but also about lost economic chances, and often the damages included compensation for loss of virginity or for pregnancy from premarital sex. These consequential and expectation damages were based on the effect of the broken engagement on the plaintiff's social standing or her chances to marry another[.]

*Id*. at 2592. The facts in the case before us show that Cooley moved into Tucker's home prior to marriage and the two engaged in premarital relations and cohabitation before breaking off the engagement.

[5] *See* Miss. Code Ann. § 11-37-125 (Rev. 2012) (replevin trial and hearing to determine rights of parties to possession). *Compare Hung Kwong Leung v. Law*, 247 So. 2d 695, 697 (Miss. 1971) (in replevin action, court found substantial evidence supporting lower court's judgment that defendant possessed and wrongfully kept jewelry from plaintiff); *Pittman v. Goudelock*, 237 Miss. 543, 549, 115 So. 2d 303, 306 (1959) (in replevin suit for diamond ring, jury question was raised by evidence as to whether agreement was entered for division of property); *Stewart v. First Nat'l Bank & Trust Co. of Vicksburg*, 192 Miss. 355, 355, 5 So. 2d 683, 683 (1942) (in replevin action to recover possession of ring and automobile, fact that items were gifts to defendant became affirmative defense); *Lee*

of proving the right to the immediate possession of the property sought to be recovered, is upon the plaintiff in a replevin action."[6] *Robinson v. Friendly Fin. Co. of Biloxi*, 241 Miss. 239, 243, 130 So. 2d 256, 257 (1961). "Where property is found in the possession of the defendant, the plaintiff should prove his right to the possession of the property by competent evidence." *Hinman v. Sabin*, 147 Miss. 509, 509, 112 So. 871, 871 (1927).

¶24. Based upon the foregoing, I would reverse and remand because the trial court applied an erroneous legal standard. Tucker must prove his right to immediate possession of the ring in accordance with the law of breach of the promise to marry, not the law of conditional gifts.

**BARNES AND JAMES, JJ., JOIN THIS OPINION IN PART.**

---

*v. Patterson*, 92 Miss. 357, 357, 45 So. 980, 981 (1908) (determining in replevin action that widow was entitled to ring as wife of decedent).

[6] Note, the replevin statutes may be "supplemented only by so much of the [Mississippi Rules of Civil Procedure] as are not inconsistent with those statutes." *Hall v. Corbin*, 478 So. 2d 253, 256 (Miss. 1985). "To fall within pendent or ancillary jurisdiction, the intruding claim must arise out of the same transaction or occurrence as the principal claim or . . . out of a common nucleus of operative fact." *Id*. at 255.